## WILLIAMS *v.* JACKSON.

### JACKSON *v.* STICKNEY.

1. By a trust deed, duly recorded, land was conveyed to the trustees in fee, and they were authorized to release it to the grantor upon payment of the negotiable promissory note thereby secured. Before that note was paid or payable, and after it had been negotiated to an indorsee in good faith for full value, a deed of release, reciting that it had been paid, was made to the grantor by the trustees and by the payee of the note, and recorded; and the grantor executed and recorded a like trust deed to secure the payment of a new note for money lent to him by another person, who had no actual notice that the first note had been negotiated and was unpaid, and who, before he would make the loan, required and was furnished with a conveyancer's abstract of title, showing that the three deeds were recorded and the land free from incumbrance. *Held,* that the legal title was in the trustee, under the second trust deed, and that the note thereby secured was entitled to priority of payment out of the land.
2. Upon a bill in equity by the holder of a debt secured by deed of trust, to set aside a release negligently executed by the trustee to the grantor, the complainant cannot have a decree for the payment of his debt by the trustee personally.

APPEALS from the Supreme Court of the District of Columbia.

The facts are stated in the opinion of the court.

*Mr. W. Hallett Phillips, Mr. William A. Maury,* and *Mr. Philip Phillips* for Williams; *Mr. James S. Edwards* and *Mr. Job Barnard* for Jackson ; *Mr. John F. Hanna* and *James M. Johnston* for Stickney.

MR. JUSTICE GRAY delivered the opinion of the court.

This is a bill in equity, filed by Benjamin L. Jackson and others, partners under the name of Jackson, Brother & Company, and heard on the pleadings and proofs, by which the material facts appear to be as follows : —

On the 1st of January, 1875, Edwin J. Sweet and his wife purchased and took a deed from Augustus Davis of a house and land in Washington, and executed and acknowledged a trust deed thereof, in which they recited that they were indebted to Augustus Davis in the sum of $8,000 for deferred payments of the purchase-money, for which they had given him their four promissory notes of the same date and payable to his order, three for the sum of $1,833.33 each, and payable in one, two and three years respectively, and one for the sum of $2,500, payable in three years, and all bearing interest at eight per cent; and by which deed, in order to secure the payment of those notes as they matured, they conveyed the land to Charles T. Davis and William Stickney, and the survivor of them, their and his heirs and assigns, in trust to permit the grantors to occupy the premises until default in payment of principal or interest of the notes ; and upon the full payment of all the notes and interest, and all proper costs, charges and commissions, to release and convey the premises to Mrs. Sweet, her heirs and assigns ; with a power of sale upon default of payment, and a provision that the purchaser at the sale should not be bound to see to the application of the purchase-money. That deed of trust was recorded on the 14th of January, 1875.

The notes secured by that deed were indorsed by Augustus Davis and Charles T. Davis, had on the margin the printed words, "Secured by deed of trust," and were soon after their date transferred by the indorsers for full value and before

maturity to the plaintiffs, and have since been held by them, except the one due at the end of the first year, which was paid by the indorsers. Charles T. Davis was a son and a partner of Augustus Davis, and was a broker and real estate agent.

On the 15th of September, 1876, before any of the other notes fell due, and without the plaintiffs' knowledge, the trustees, Davis and Stickney, executed a deed of release of the land to Mrs. Sweet, reciting that the debt secured by the trust deed had been fully paid and discharged, as appeared by the signature of Augustus Davis, who joined in the execution of the release.

At or before the same time, Sweet and wife employed Charles T. Davis to make some arrangement by which they could take up those notes and give others running for a longer time ; he went to Samuel T. Williams, and offered him the land unincumbered, as security for a loan of $5,000, payable in four years, and bearing nine per cent interest ; and Williams agreed to make the loan if satisfied by a conveyancer's abstract of title that the land was free of all incumbrance, but not otherwise.

On the 27th of September, 1876, a deed of trust, containing provisions like those in the first deed of trust, was executed by Sweet and wife to Robert K. Elliott and Charles T. Davis to secure the payment of a note for $5,000 in four years to Williams, with interest at the rate of nine per cent. On the 28th of September, the deed of release and the second deed of trust were recorded ; Charles T. Davis furnished Williams with certificates of a conveyancer that he had examined the title on the 14th of September and found it good, subject to the first trust deed, and again on the 28th, when the only changes were the release and the second deed of trust ; and Williams thereupon gave to Davis his check, payable to Davis's order, for $5,000, (which Davis applied to his own use,) and received from him the note of Sweet and wife for the same amount and the trust deed to secure its payment. Neither Williams nor Sweet and wife then knew that, at the time of the execution of the release, Augustus Davis was not the holder of the notes secured by the first trust deed. On the 29th of September, Sweet and wife executed another trust deed to Charles T. Davis to secure the payment of six promissory notes to Augustus Davis for $530.26 each, payable at intervals of six months from their date.

On the 27th of July, 1877, the interest due on the note to Williams not having been paid, the trustees, Elliott and Davis, sold the land by auction for the sum of $6,325 to Eli S. Blackwood, who paid them $1,325 in cash (which was applied to the payment of the interest and of other charges) and gave them his note for $5,000, secured by a trust deed of the land.

The bill, which was against Williams, Sweet and wife, Augustus Davis and Blackwood in their own right, against Charles T. Davis and Stickney in their own right and as trustees, and against Elliott as trustee only, prayed that the release by Stickney and Charles T. Davis, as well as all the subsequent conveyances, might be declared void as against the first trust deed, and the trust created by that deed be declared to have priority over all subsequent incumbrances; that Charles T. Davis be removed from his trust and a new trustee be appointed in his stead; that the land be sold and the proceeds applied, under order of the court, to the payment of the notes held by the plaintiffs and of any other lawful claims; and for an injunction, a discovery, an account and further relief.

The judge before whom the case was first heard made a decree, declining to set aside the release or to declare that the first deed of trust had priority over the second; adjudging that the first deed of trust was fraudulently and negligently released by Augustus Davis and Charles T. Davis, and wrongfully and negligently released by Stickney, and therefore ordering that the plaintiffs recover against Augustus Davis, Charles T. Davis, Stickney, and Sweet and wife the amount due on the notes held by them, with interest; declaring that the note for $5,000 held by Williams was the first charge on the land; and ordering the land to be sold, and the proceeds to be distributed in paying off the incumbrances in the order thus established.

The court at general term reversed those parts of the decree which declined to set aside the release, and which declared that Williams was entitled to priority; and also that part which adjudged that the plaintiffs recover against Stickney the amount of their debt; affirmed it in other respects; and ordered the proceeds to be first applied to the payment of the plaintiffs' debt. Williams appealed from so much of this decree as gave

priority to the plaintiffs' claim ; and the plaintiffs appealed from so much as reversed the decree against Stickney.

By the statutes regulating the conveyance of real estate in the District of Columbia, all deeds of trust and mortgages, duly acknowledged, take effect and are valid, as to all subsequent purchasers for valuable consideration without notice, and as to all creditors, from the time of their delivery to the recorder for record ; whereas other deeds, covenants and agreements take effect and are valid, as to all persons, from the time of their acknowledgment, if delivered for record within six months after their execution.   Any title-bond or other written contract in relation to land may be acknowledged and recorded in the same manner as deeds of conveyance ; and the acknowledgment, duly certified, and the delivery for record, of such bond or contract, shall be taken and held to be notice of its existence to all subsequent purchasers.   Rev. Stat. D. C., sects. 446, 447, 449.

The first deed of trust from Sweet and wife did not give the trustees merely a power to release the land on payment of the notes secured thereby, and to sell on default of payment ; but it vested the legal title in them.   A release of the land before payment of the notes would be a breach of their trust, and would be unavailing in equity to any one who had knowledge of that breach.   *Insurance Company* v. *Eldredge*, 102 U. S. 545. But it would pass the legal title.   *Taylor* v. *King*, 6 Munf. (Va.) 358 ; *Den* v. *Troutman*, 7 Ired. (N. C.) L. 155.   The legal title in the land, being in the trustees under the first deed of trust, passed by their deed of release to Mrs. Sweet, and from her by the second deed of trust to the trustees for Williams.

The first deed of trust having been made to the trustees therein named for the benefit of Augustus Davis, and to secure the payment of the notes from the grantors to him ; and the plaintiffs, upon the transfer and indorsement to them of those notes, having taken no precaution to obtain and put on record an assignment of his rights in such form as would be notice to all the world ; the recorded deed of release, executed by him as well as by the trustees, reciting that the notes had been paid, and conveying the legal title, bound the plaintiffs, as well as himself, in favor of any one acting upon the faith of the record and ignorant of the real state of facts.

If the plaintiffs wished to affect subsequent purchasers with notice of their rights, they should have obtained a new conveyance or agreement, duly acknowledged and recorded, in the form either of a deed from the original grantors, or of a declaration of trust from the trustees, or of an assignment from Augustus Davis of his equitable interest in the land as security for the payment of the notes. The record not showing that any person other than Augustus Davis had any interest in the notes, or in the land as security for their payment, an innocent subsequent purchaser or incumbrancer had the right to assume that the trustees, in executing the release, had acted in accordance with their duty.

Williams, is admitted to have had no actual knowledge that the notes secured by the first trust deed were held by the plaintiffs, or that they were unpaid. The knowledge of those facts by Charles T. Davis, through whom Williams made the loan, does not bind him, because upon the evidence Charles T. Davis appears not to have been his agent, but the agent of Sweet and wife.

Williams took every reasonable precaution that could have been expected of a prudent man, before advancing his money to Charles T. Davis for Sweet and wife. He declined to lend his money, until after he had been furnished with a conveyancer's abstract of title, showing that the deed of release from the trustees under the first deed of trust and from the original holder of the notes secured thereby, as well as the second deed of trust to secure the repayment of the money lent by Williams, had been recorded, and that the land was not subject to any incumbrance prior to the second deed of trust.

It was suggested in argument that as the first deed of trust showed that the notes secured thereby were negotiable and were not yet payable, and that the land was not intended to be released from this trust until all the notes were paid, Williams was negligent in not making further inquiry into the fact whether they were still unpaid. But of whom should he have made inquiry? The trustees under the first deed and the original holder of the notes secured thereby having expressly asserted under their own hands and seals that the notes had been paid, and Sweet and wife having apparently concurred in

the assertion by accepting the deed of release and putting it on record, he certainly was not bound to inquire of any of them as to the truth of that fact.; and there was no other person to whom he could apply for information, for he did not know that the notes had ever been negotiated, and he had no reason to suppose that they had not been cancelled and destroyed.

To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud, or gross or wilful negligence, on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business. *Hine* v. *Dodd*, 2 Atk. 275 ; *Jones* v. *Smith*, 1 Hare, 43, and 1 Phillips, 244 ; *Agra Bank* v. *Barry*, Irish R. 6 Eq. 128, and Law Rep. 7 H. L. 135 ; *Wilson* v. *Wall*, 6 Wall. 83 ; *Norman* v. *Towne*, 130 Mass. 52.

The equity of Williams being at least equal with that of the plaintiffs, the legal title held for Williams must prevail, and he is entitled to priority. The decree appealed from is in this respect erroneous and must be reversed.

But that decree, so far as it refuses relief against Stickney personally, is right. The main purpose of the bill is to set aside the deed of release and to satisfy the plaintiffs' debt out of the land. The attempt to charge Stickney with the amount of that debt, by reason of his negligence in executing the release, is wholly inconsistent with this. The one treats the release as void ; the other assumes that it is valid. In the one view, Stickney is made a party in his capacity of trustee only ; in the other, it is sought to charge him personally. The joinder of claims so distinct in character and in relief is unprecedented and inconvenient. *Shields* v. *Barrow*, 17 How. 130, 144; *Walker* v. *Powers*, 104 U. S. 245.

The result is that the decree appealed from must be reversed, and the case remanded with directions to enter a decree in conformity with this opinion, and without prejudice to an action at law or suit in equity against Stickney.

*Decree reversed.*

MR. JUSTICE HARLAN did not sit in this case, nor take any part in deciding it.