Mr. Justice James
delivered the opinion of the Court:
This is an action to recover a lot in the city of Washington, in which the plaintiffs, Elizabeth Pierce and Ann Hayes claim an undivided one-eighth interest as heirs of one John Downs. The question presented by the first bill of exceptions related to proof of the ancestor’s title. The plaintiffs first offered in evidence a deed to John and William Downs a deed executed by them to trustees to secure payment of the purchase-money, and a deed of release by the trustees, purporting to reconvey the estate to them as tenants in common. To the admission of this last mentioned deed the defendant excepted, on the ground that the grantors in the trust had an estate of joint tenancy, and that a reconveyance to them as tenants in common was inadmissible to show title of a different kind in them, unless supplemented by testimony that they directed the execution of the deed of release in that form. We think that objection was properly overruled.
It is immaterial that the trustees may have committed a breach of their trust in reconveying to their grantors a title differing from that which they had held before creating the trust. This action deals only with the legal title, and < a conveyance by a trustee, even in disregard of his duty, has the usual legal effect of a deed. Williams vs. Jackson, 107 U. S., 482; Taylor vs. King, 6 Munf., Va., 358; Den. vs. Trautman, 7 Ired., N. C., 155.
It was not necessary that the grantors of the trust should give directions that the reconveyance to them by way of release should create a tenancy in common; the trustees’ deed would have that effect at law, and they would continue to hold as tenants in common until they should proceed in equity to have a correction of the title.
It appears by the second and third bills of exceptions that Elizabeth Pierce and Mrs. Hayes, the plaintiffs, were examined as witnesses to prove facts showing their relation by descent to John Downs, and that the defendant took an *500 exception on the ground that their relation to the family of John Downs must first be shown aliunde. The object of the objection seems to have been to invoke the rule which excludes declarations in regard to family matters until it has been shown aliunde that the declarant was a member of the family. The rule as to proof aliunde does not exclude parties as witnesses. It only requires proof aliunde the declarant, and the statute has made parties competent to prove any fact admissible in evidence. The plaintiffs were as competent as any other witnesses could have been to prove facts from which the jury might be allowed to deduce their alleged relation to John Downs. The second and third exceptions were, therefore, properly overruled.
The fourth exception was taken to the refusal of the court to instruct the jury at the close of the plaintiffs’ testimony, that they must find a verdict for the defendant, because there was no sufficient evidence of the marriage of the plaintiffs’ parents and grandparents; that is to say, no sufficient evidence to show a common ancestor of themselves and John Downs, from whom they claimed to derive the estate in question by descent. It is not material to recite the particulars of the testimony produced by the plaintiff to establish this point. It is enough to say that it was sufficient to make out a case prima facie under the rules laid down by this court in the case of Green vs. Norment, 5 Mackey, 80, to which wé adhere with confidence. The court was right, therefore, in refusing to instruct the jury as prayed.
The fifth bill of exceptions raises the question of the sufficiency of certain evidence to show that John Downs, from whom the plaintiffs claim to derive title by descent, was, at the time when he acquired his title, a citizen of the United States.
The Maryland Act of 1791, Oh. 45, Sec. 6, provided “ That any foreigner may, by deed or will hereafter to be made, take spd hold lands within that part of the said territory (vizv of Columbia), which lies within this State, in the same man *501 ner as if he was a citizen of this State, and the same lands may be conveyed by him, and transferred to, and be inherited by, his heirs or relations as if he and they were citizens of this State.” This act was in force in this District. According to the construction given to it by the Supreme Court of the United States in Spratt vs. Spratt, 1 Peters, 843, the plaintiffs, who were aliens at the time of John Downs’ death, that is to say, when their capacity as heirs would begin, could inherit from him if he acquired this land as an alien, but could not so inherit if he acquired his title after becoming a citizen, inasmuch as the statute did not apply to the latter case, and, therefore, left it to be governed by the common law, which denied inheriting capacity to aliens.
It appears by the bill of exceptions, that the records of the Circuit Court of the District of Columbia show that .John Downs made, in the office of the clerk of the court,- on December 10,1835, a declaration of his intention to apply for letters of naturalization; and evidence was received tending to show that, during several years after the expiration of two years from that time he voted at certain elections in Washington City, but no record of his admission to citizenship is found. It was urged at the argument that, notwithstanding the record of admission to citizenship which the statute required to be made is not found, it was competent to show by parol proof, after so great a lapse of time, that Downs must have been so admitted. In support of this proposition the defendant cited Hogan vs. Kurtz, 94 U. S., 778. In that case the court said : “Proceedings of the kind qre required to be recorded, hut it was proved or conceded that the records of such proceedings in this District were destroyed many years ago; and in view of that fact, and of the long period between the purchase of the property and the other evidence exhibited in the record, the court left the question whether the party was not naturalized to the jury.” The assumed loss of records was a material element jn tl}e conclusion of the Supreme Court. The argument *502 was that the record alleged to have existed might have existed and been lost, since records known to have existed were thus lost; and then the conduct of the party, in claiming to have been naturalized, that is to say, in assuming the original existence of such a record, was admitted as showing that what might have happened had -happened. The strain of this argument will not bear another ounce, and that ounce has been added in this case. ' The evidence set out in the bill of exceptions does not state a search in all the courts held by the judges of the Circuit Court, and does not show a loss of all records in which the fact now in question may have been recorded. Counsel in this case will understand the meaning and propriety of our observation, when we suggest that a search of the records of the District Court of the United States for this District should apjiear to have been made before the clerk’s statement that he did not find any record of naturalization proceedings between the years 1835 and 1841 should be considered ground for receiving parol evidence of Downs’ naturalization. The court was right, therefore, in excluding testimony to show that John Downs voted at elections in Washington without being challenged at the polls.
By the sixth bill of exceptions it appears that at the close of all the evidence in the case, the defendant asked the court to give the following instructions to the jury, and that they were refused:
“First. If the jury find from the evidence that John and William Downs purchased the property in controversy from the Bank of Washington in 1844, and took the conveyance, the recoid of which has been read in evidence here, the entire estate devolved on William on the death of John, and the plaintiffs are not entitled to recover in this action, and your verdict should be for the defendant.
“Second. Unless the jury believe from the evidence that the parents and grandparents of the plaintiffs were lawfully married, they must find for the defendant.
*503 “ And the court instructs the jury that proof of such marriage can only be made in this form of action by the record, or a certified copy thereof, or the testimony of a witness or witnesses who were present at the ceremony, or by the declarations of deceased persons who are related by blood or marriage to such parents.”
We have already held that, after and by effect of the deed from the trustees to John and William Downs, they held as tenants in common, and the effect of this decision is that John Downs’ interest would go to his heirs and not by. supervisorship to William Downs. The first of these prayers was, therefore, properly refused.
As to the second, the effect of our decision relating to the second and third bills of exceptions is that, according to the rule laid down by this court in Green vs. Norment, the marriage of parents and grandparents may be shown, in making out the pedigree of the plaintiffs, by proof of facts from which such marriages may be inferred, and that- the plaintiff, claiming as heir, is not confined to the method of proof described in the second prayer.
The last of the exceptions is taken to the court’s refusal to grant a new trial. With the views which we have expressed as to the several rulings during the trial, we are, of course, of the opinion that a new trial was properly refused,
The judgment of the Circuit Court is therefore affirmed.