# CHESAPEAKE BEACH RAILWAY COMPANY *v.* WASHINGTON, POTOMAC, & CHESAPEAKE RAILROAD COMPANY.

EJECTMENT; TRESPASSERS; CONVEYANCE OF LAND OUT OF POSSESSION; CORPORATIONS; PRESUMPTIONS; EVIDENCE; RECITALS IN DECREE AS EVIDENCE; JURISDICTION; TRUSTEES; DEEDS OF TRUST.

1. Exceptions to the general rule that a plaintiff in ejectment must recover on the strength of his own title and not on the weakness of his adversary's title are: (1) Where the plaintiff can show that the title under which the defendant claims has an intermediate common source with his own (following *Anderson* v. *Reid,* 10 App. D. C. 426); and (2) that a sufficient prima facie case is made by the plaintiff when he has shown that while in quiet and undisturbed possession of the premises, the defendant, a mere trespasser, and with no color of title, entered and ousted him of his possession. (Following *Bradshaw* v. *Ashley,* 14 App. D. C. 485.)

2. The fact that the plaintiff in ejectment acquired title by a deed from a former owner, made after the ouster of the latter from possession by the defendant, will not prevent a recovery by the plaintiff, as the ancient English statutes prohibiting the conveyance of lands held adversely, if ever in force in this jurisdiction, are obsolete. (Following *Matthews* v. *Hevner,* 2 App. D. C. 349.)

3. Where possession of land has once been taken and ownership exercised thereunder, a continuing constructive possession up to a reasonable time before bringing an action of ejectment to recover the land is sufficient as against an intruder, who makes no pretense of color of title.

4. Even though the failure by a railroad company to construct its road within the time prescribed by the act of its incorporation might have the legal effect to at once terminate the existence of the corporation, in the absence of evidence from which such a failure could be inferred the presumption of compliance must be indulged.

5. Although, strictly speaking, a plaintiff in ejectment who claims under a deed of trust foreclosed by a judicial decree should introduce the deed of trust in evidence, the decree and a deed to the plaintiff made in accordance with it are sufficient prima facie evidence of title, where the decree shows upon its face that the necessary parties were before the court, and recites the substance of the deed of trust.

6. *Quære,* whether in a foreclosure suit by the grantee in a deed of trust of lands, against the grantor, a corporation, a court of the State in which the defendant was incorporated, and having complete jurisdiction over all parties, has the power to include in its decree, not only such of the lands covered by the deed of trust as are in that State, but such as are in this District as well.

7. A trustee vested with the legal title of land can pass the same by a conveyance even when made in breach of his trust; and the general power of a trustee to sell and convey the estate is coextensive with his ownership of the legal title; and this general power over the legal title is entirely distinct from the execution of a special power given in respect to the sale of an estate.

8. A deed of conveyance by a trustee under a deed of trust of lands in Maryland and this District, who had also been appointed trustee by decree of a Maryland court to sell and convey the lands, examined and *held* sufficient to pass title to the land here, even assuming the Maryland court had no power by its decree to pass title to the land here, a recital in the deed of the Maryland decree, which was followed by the recital of a nominal money consideration being construed as limited in its operation to the Maryland land, leaving an independent valuable consideration recited, together with apt words of conveyance sufficient to pass title to the land in this District.

No. 1411.    Submitted April 15, 1904.    Decided May 4, 1904.

HEARING on an appeal by the defendant from a judgment of

the Supreme Court of the District of Columbia, on a verdict, in an action of ejectment.                    *Affirmed.*

The Court in the opinion stated the case as follows:

The Washington, Potomac, & Chesapeake Railroad Company brought this action of ejectment against the Chesapeake Beach Railway Company to recover possession of a strip of land in the District of Columbia.

Plaintiff's evidence tended to show title as follows:

(1) An act of the legislative assembly of Maryland, approved March 20, 1868, incorporating the Southern Maryland Railroad Company, and an act of Congress, approved June 27, 1882, authorizing the corporation to extend a railroad into and within the District of Columbia.

(2) Deeds made by a number of persons between June 20 and December 12, 1884, conveying rights of way through the several parcels of land making up the entire strip as described in the declaration, to the Southern Maryland Railroad Company, its successors and assigns. Each deed recites a valuable consideration and appears to have been duly executed, acknowledged, and recorded.

(3) A decree of the supreme court of the District of Columbia, passed September 1, 1885, in a suit by the Central Trust Company of New York against the Southern Maryland Railroad Company. This decree recites that on January 1, 1881, the said railroad company executed a conveyance to the said trust company in trust to secure certain bonds of its railway (as described) in Maryland and the District of Columbia, its extensions and appurtenances, with the equipments thereof, etc., "and also all rights of way and land occupied in connection with or for the construction," etc., all "property, real and personal, and improvements of any kind and description, then or there-

after to be made, acquired," etc., which was also recorded in the District of Columbia. Said decree foreclosed the lien of said trust deed, and appointed Anthony M. Zane to make sale of the aforesaid property, franchises, etc.

(4) Conveyance by Anthony M. Zane, in accordance with the requirements of the aforesaid decree and further decree ordering the conveyance to be made to Franklin E. Gregory of the rights of way aforesaid and other property.

(5) Certificate of incorporation, under the laws of Maryland, of the Washington & Potomac Railroad Company, under date of April 1, 1886, reciting the purchase by Gregory of the property of the Southern Maryland Railroad Company in Maryland and the District of Columbia under foreclosure, and the purpose of the new corporation to take over the property so foreclosed.

(6) Deed by Franklin E. Gregory, April 1, 1886, to said Washington & Potomac Railroad Company.

(7) A trust deed made by the Washington & Potomac Railroad Company to the Union Trust Company of Philadelphia, on April 1, 1886, wherein it "doth by these presents grant, bargain, sell, alien, assign, transfer, release, convey, and confirm," to the said trustee, its successors and assigns, all of the property before described as belonging originally to the Southern Maryland Railroad Company, with power of sale under certain contingencies, to secure the payment of an issue of bonds. This was also recorded in the District of Columbia.

(8) A certificate of incorporation under the laws of Maryland on July 24, 1901, of the Washington, Potomac, & Chesapeake Railway Company, organized for the purpose of taking over and operating the railway aforesaid.

(9) A conveyance made July 25, 1901, by the Union Trust Company of Philadelphia, and other persons who had been concerned in the purchases aforesaid and in the last-mentioned incorporation, to the Washington, Potomac, & Chesapeake Rail-

road Company aforesaid. The following extracts from this conveyance are made necessary by the contentions of the appellant:

"Whereas, by a decree of the circuit court of the United States for the district of Maryland, bearing date the 22d day of May, 1900, and passed in a case therein pending, wherein the said the Union Trust Company of Philadelphia, trustee, was complainant, and the Washington & Potomac Railroad Company was defendant, the above-named the Union Trust Company of Philadelphia, trustee, was appointed trustee with authority and power to sell the property in said proceedings mentioned, the same being the Washington & Potomac Railroad and its equipments and appurtenances, together with the franchises of the said Washington & Potomac Railroad Company, as by reference to the proceedings in said cause will more fully appear; and whereas, after having given bond, as required in said decree, and having complied with all the other requisites of said decree, and having given due notice of the time, place, and terms of sale by advertisements duly published, as in said decree provided, the said the Union Trust Company of Philadelphia, trustee, did on the 18th day of July, in the year 1900, at the town of Upper Marlboro, in Prince George's county, Maryland, sell the property decreed to be sold by the decree in said cause, and hereinafter more fully described;  *  *  *  and whereas, the said sale so made was duly reported to said circuit court of the United States for the district of Maryland, and was finally ratified and confirmed by the decretal order of said court bearing date the 8th of June, 1901."

Then reciting the final purchase by the plaintiff, the said trust company and others before referred to, it proceeds, "in consideration of the premises and of the sum of $10, the receipt whereof is hereby acknowledged,  *  *  *  do severally grant to the said Washington, Potomac, & Chesapeake Railroad Company, party hereto of the fourth part, all the railroad of the said

Washington & Potomac Railroad Company, beginning at Point Lookout at the confluence of the Potomac river and the Chesapeake bay, in St. Mary's county, in the State of Maryland, and running thence through a part of St. Mary's county, Charles county, and Prince George's county, Maryland, to the city of Washington, in the District of Columbia, and its extensions and appurtenances, with the equipments thereof, consisting of all its personal property and effects of every kind, and also all the rights, liberties, privileges, immunities and franchises of the said Washington & Potomac Railroad Company, and also all the rights of way and land used in connection with or for the construction, use, and maintenance of said railroad, its extensions and branches, together with all the bridges, culverts, side tracks, depots, grounds, machine shops, buildings, and other structures, property, real and personal, and improvements of every kind and description acquired or erected on or connected with the said line of railroad, and all tolls, rents, and income belonging or due to said railroad company; to have and to hold the above-described property, rights, privileges, franchises, and appurtenances of every description to the said the Washington, Potomac, & Chesapeake Railroad Company, its successors and assigns; and the said parties hereto of the second and third parts do hereby covenant that they will warrant specially the property hereby conveyed against encumbrances made by them, and none other; and the said parties of the first, second, and third parts hereby covenant that they will execute such further assurances as may be requisite."

The following is a substantial statement of the evidence of possession by the Southern Maryland Railroad Company and of the present possession of the defendant:

Melville C. Hazen, for thirteen years employed in the engineering department of the District, testified that he knew the old Southern Maryland tracks near Burrville and Deanwood;

had passed over them many times, and surveyed along the line. He made a plat for plaintiff on February 22, 1903, which was exhibited in evidence, and designates the strip in controversy. He said the plats accompanying the right of way deeds and the present plat are similar. The tracks used by defendant occupy the same ground that was occupied by the track of the Southern Maryland; they enter the property at the same point and leave it likewise. When the plat was made the roadbed, on the actual line of the roadbed of the Southern Maryland, was being used by the trains of defendant and had been for about three or four years. (The action was begun January 13, 1902.)

Return Jonathan Meigs, 3d, testified that he had been a surveyor for twenty-five years. In 1879 or 1880 he was employed in laying out the right of way of the Southern Maryland Railroad Company, and was again employed therein in 1886. In 1898 he was employed by the defendant in engineering work upon the same right of way. The right of way of the Southern Maryland was 66 feet wide, and the defendant uses this right of way to the District line. Upon the conclusion of this evidence the defendant moved the court to instruct the jury to return a verdict in its favor. This was denied and exception taken. Defendant introduced no evidence.

Plaintiff then requested a charge, which was given, to the effect that if the Southern Maryland Railroad Company entered into said land at or about the time of the execution and delivery of the several deeds to it made, and exercised acts of dominion over the same, and that defendant entered upon said property and took possession thereof prior to the bringing of the action, the verdict should be for the plaintiff. The court further charged the jury that the only question was whether the Southern Maryland Company had possession under the said deeds, and that was a question to be determined upon their opinion of the testimony relating thereto

Vol. XXIII—38 .

Before the jury retired the defendant excepted to the charge: 1st. Because the plaintiff had not shown title in the grantors in the right of way deeds. 2d. Because it had failed to show continued possession of the lands from about the date of those deeds to the time of the alleged ouster by defendant. 3d. Because it had failed to show that either it or its immediate grantors had ever been in possession, or that any ouster of them had ever in fact occurred. 4th. Because the various counts of the declaration disclosed an outstanding record title to various parcels of the land in other than those under whom plaintiff claims. 5th. Plaintiff had failed to show that the legal title had in fact been vested in it by the deeds introduced.

Verdict was returned for the plaintiff, and from the judgment thereon the defendant has appealed.

*Mr. Frederic D. McKenney* and *Mr. J. S. Flannery* for the appellant.

*Mr. Charles Poe* and *Mr. Samuel A. Putman* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. No principle is more firmly established than that the plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's. Until the plaintiff has made a prima facie case the defendant is not called upon to justify his possession. Where the plaintiff's right is not founded upon a previous adverse possession under all the conditions requisite to confer title, he must, as a general rule, connect himself by a chain of transfer with the sovereignty of the soil. An exception to the rule arises where he can show that the title under which the defendant claims has an intermediate

common source with his own. *Anderson* v. *Reid,* 10 App. D. C. 426, 429. There is another well-established exception to the general rule, namely, that a sufficient prima facie case is made by the plaintiff when he has shown that whilst in the quiet and undisturbed possession of the premises the defendant entered and ousted him of his possession. *Bradshaw* v. *Ashley,* 14 App. D. C. 484, 504, Affirmed in 180 U. S. 59, 45 L. ed. 423, 21 Sup. Ct. Rep. 297.

This is hardly an exception to the general rule, but rather an illustration of its application under special circumstances and for a just purpose. Antecedent possession under claim of title is held to raise a presumption of regularity sufficient to warrant recovery against a mere trespasser or intruder with no color of title. It would be a great hardship, in such a case, to put the plaintiff upon formal proof of a regular chain of title; and to give the trespasser the benefit of the presumption of title by reason of a possession so acquired would be to encourage intrusion upon lands.

The plaintiff, it will be remembered, went no further back in the deraignment of title than the several grants of the land in controversy to the Southern Maryland Railroad Company. Assuming, for the present, that the plaintiff has sufficiently shown the acquisition of the right of that company, the question arises, Was there such evidence of possession under color of that claim of title, and ouster by the defendant, as to relieve the plaintiff of the burden of the general rule in respect of proof of a complete chain of title? Notwithstanding the meagerness of that evidence as recited in the bill of exceptions, we cannot say that there was error in submitting the issue to the jury. As contended by the appellant, the evidence tending to show both possession and ouster would seem to be confined to the Southern Maryland Railroad Company, whose title was thereafter attempted to be conveyed. But the point is immaterial, because

the ancient English statutes prohibiting the conveyance of lands held adversely, if ever in force in this jurisdiction, have long since become obsolete. *Matthews* v. *Hevner,* 2 App. D. C. 349, 357; *Peck* v. *Heurich,* 167 U. S. 625, 630, 42 L. ed. 303, 305, 17 Sup. Ct. Rep. 927.

The benefit of that possession, therefore, inured to the plaintiff as the holder of the title of the Southern Maryland Railroad Company. The evidence shows, in rather a general and vague way, it must be admitted, that the strip of land in controversy was once occupied by the track of the Southern Maryland Railroad Company, which is the character of possession contemplated in the grants of the right of way. It further shows that four or five years before the trial the defendant was first seen in possession of the strip over which it has since continued to run its cars. How this change of possession took place is not shown. It is not made to appear that the actual possession of the Southern Maryland Railroad Company or any one of its successors continued until the entry of the defendant; nor is it to be inferred that the defendant made its entry and by the exercise of actual force ejected the former possessor. We cannot agree to the contention that these conditions are necessary to the operation of the rule under consideration. Where possession has once been taken and ownership exercised thereunder, a continuing constructive possession up to a reasonable time before bringing the action is sufficient as against an intruder who makes no pretense of color of title. This we understand to be the rule laid down by the Supreme Court of the United States in its latest utterance upon this subject. *Bradshaw* v. *Ashley,* 180 U. S. 59, 45 L. ed. 423, 21 Sup. Ct. Rep. 297.

The defendant, having failed to offer any evidence in justification or explanation of its possession, can be regarded as nothing more than a mere intruder and trespasser. On the other hand, it is not made to appear that the Southern Maryland

Railroad Company, once in actual possession under claim of title, voluntarily abandoned that possession or relinquished it with the intention never to return.   Having obtained a peaceable possession under grant for a valuable consideration, the presumption, in the absence of evidence to the contrary, ought, in our opinion, to be against voluntary abandonment.   We say in the absence of evidence to the contrary, because there is no direct evidence of intention to abandon, and the lapse of time has not been so great as to warrant its inference,—especially when the proceedings looking to the satisfaction of the debts of the Southern Maryland Railroad Company and the attempted succession to its franchises and property are taken into consideration.

2.  It remains now to consider the several objections of the appellant to the sufficiency of the evidence tending to show the passage to the appellee of the presumptive title of the Southern Maryland Railroad Company under its grants of right of way. These will be passed upon in their order.   (1)   There is no occasion to determine whether the franchises of the Southern Maryland Railroad Company ceased and determined under the provisions of the Maryland act of incorporation, and the act of Congress extending the exercise of its franchises to the District of Columbia.   Passing by the question whether a failure to construct the road within the time prescribed in those acts would, of itself, have the legal effect to at once terminate the existence of the corporation, it is sufficient to say that there is no evidence from which that failure could be inferred.   Without evidence the presumption of compliance must be indulged.   (2) Strictly speaking, the plaintiff ought to have introduced in evidence the trust deed foreclosed by the decree of the supreme court of the District of Columbia, and enough of the record of the suit to show its entire purpose and the interests involved.   But, under the circumstances, we regard the decree, and the deed made in accordance with it, as sufficient prima facie evidence of the

transition of the title. This decree shows upon its face that the necessary parties were before the court, and contains an ample recital of the substance of the trust deed executed by the defendant, and which was regularly foreclosed upon the property therein described. (3) The last objection is to the effect given to the conveyance by the Union Trust Company to the plaintiff. That conveyance recites a decree of the circuit court of the United States for the district of Maryland, foreclosing the trust deed and appointing the Union Trust Company, the grantee in the trust deed foreclosed, as "trustee with authority and power to sell the property" described, etc.; also a sale thereunder of that property (including the land in controversy), the payment of the price, and the confirmation of the sale, etc. In consideration of the premises recited, and a further consideration of $10 received, the Union Trust Company proceeds to grant the said property to the plaintiff, its successors and assigns, and concludes with a covenant to execute such further assurances as may be requisite. In view of the opinion of the Supreme Court of the United States, expressed in *Muller* v. *Dows,* 94 U. S. 444, 449, 24 L. ed. 207, 209, we are not prepared to accept the concession of the appellee that the court had no jurisdiction to include in its decree the property situated in the District of Columbia. The legal title was in the trust company, which was the plaintiff in the suit. The defendant was a Maryland corporation, and hence properly before the court and subject to its decree. The sale, it will be remembered, was not under execution, or even by a third person appointed to make the same, but was by the complainant (the holder of the legal title), acting under the decree of a court having complete jurisdiction of the persons. As was said in *Muller* v. *Dows,* the court "cannot send its process into that other State, nor can it deliver possession of land in another jurisdiction, but it can command and enforce a transfer of the title. And there seems to be no

reason why it cannot, in a proper case, effect the transfer by the agency of the trustees when they are complainants." But assuming what has been conceded by the appellee, that the court had no jurisdiction to foreclose upon property situated in the District of Columbia, and, hence, that no title could pass by virtue of its decree, we pass to its contention that the conveyance had the effect to pass the legal title of the grantor, notwithstanding the recital of that decree and the proceedings thereunder.

It is well settled that a trustee vested with the legal title can pass the same by a conveyance even when made in breach of his trust. *Williams* v. *Jackson,* 107 U. S. 478, 482, 27 L. ed. 529, 530, 2 Sup. Ct. Rep. 814; 1 Perry, Trusts, § 334. The latter says: "The general power of a trustee to sell and convey the estate is coextensive with his ownership of the legal title; and this general power over the legal title is entirely distinct from the execution of a special power given in respect to the sale of an estate."

Without denying this general proposition, the appellant controverts its application to the conveyance made. Its contention is that the recital of the decree and proceedings thereunder operates as a distinct limitation upon the title intended to be conveyed, in other words, is an express description of the power intended to be executed, and that alone.

In this we cannot concur. It clearly operates upon the Maryland property, and was inserted for that purpose, showing thereby the investiture of the complete title and ownership, beneficial as well as legal; but it occurs as a recital of part of the consideration of the deed, and not by way of limitation upon, or exception from, the property and estate actually conveyed. The recital can be regarded as limited in its operation to the Maryland property as distinguished from that in the District of Columbia. As to the latter it can be rejected as surplusage, and

an independent valuable consideration remains, together with apt words of conveyance of the entire title of the grantor.

There is no actual limitation of the estate conveyed or the capacity in which the grantor acts, and none is necessarily to be implied.

Our conclusion is, therefore, that the court did not err in accepting the deed as an effectual conveyance of the legal title for the purposes of the action.

Finding no error in the proceedings on the trial, the judgment will be affirmed with costs. It is so ordered.     *Affirmed.*