**BALLARD BROS. FISH CO., Inc., et al. v. STEPHENSON et al.**

**BORUM et al. v. SAME.**

Nos. 3122, 3124.

Circuit Court of Appeals, Fourth Circuit.

April 13, 1931.

No. 3122:

L. P. Matthews, of Norfolk, Va. (A. G. Dunton, of Norfolk, Va., J. Brooks Mapp, of Keller, Va., and Matthews & Dunton, of Norfolk, Va., on the brief), for appellants.

James Mann, of Norfolk, Va. (Tazewell Taylor and Mann & Tyler, all of Norfolk, Va., on the brief), for appellees.

No. 3124:

L. P. Matthews and H. B. G. Galt, both of Norfolk, Va., for appellants.

G. A. Harris, of Suffolk, Va., and Michael Cooper, I. W. Jacobs, and A. S. Holtz, all of Norfolk, Va., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

PARKER, Circuit Judge.

These are appeals from decrees entered by the court below in controversies which arose in the bankruptcy proceedings of the Norfolk Residence Corporation. Certain property held by the bankrupt was sold under orders of court; and controversies as to the right to the proceeds of sales arose between holders of notes secured by deeds of trust on the property executed by the bankrupt and holders of notes secured by deeds of trust which had been executed by prior owners of the property, and under which it had been sold at the time of its purchase by bankrupt. The holders of the notes last mentioned, which had not been paid, contended that the sales under which the bankrupt acquired title to the property were irregular and void; that the bankrupt took the title subject to their rights; that the trustee under the deeds of trust executed by the bankrupt, being the same person as the trustee from whom it had purchased, had notice of the equities in their behalf; and that notice to him was notice to the holders of the notes secured by the deed of trust to him. These latter contended that they were purchasers for value and without notice, · and, as such, were not affected by outstanding equities. The court below held with the contention of the holders of the notes executed by the bankrupt; and from decrees in their favor the holders of the notes secured by the prior deeds of trust have appealed.

The cases arise out of the failure of the Guaranty Title & Trust Corporation of Norfolk, hereafter referred to as the Title Company, and of its subsidiary corporation, the Norfolk Residence Corporation, hereafter referred to as the Residence Company. The Title Company was engaged in lending money on real estate, and its method of business was to take notes from the borrower secured by deed of trust executed to its president, one A. P. Grice. It then sold or discounted the notes, guaranteeing the payment of principal and interest. The purchasers of the notes looked for payment to the Title Company, which paid principal or interest when due, whether it had collected from the borrower or not, and attended to the matter of foreclosure upon default. The Residence Company was owned by the Title Company, and was organized to buy in property at foreclosure sales to protect the interest of the latter.

In case No. 3122 it appears that Frank Lindsay and Addie C. Ainsworth, on June 15, 1927, borrowed from the Title Company $35,000, executing notes therefor maturing June 15, 1929, secured by a deed of trust on land in which Grice was named as trustee. These notes were guaranteed by the company, and were sold to investors. The makers defaulted in the payment of interest and taxes, and the company, having paid the interest, and being the holder of interest coupons, directed the trustee to foreclose. The trustee thereupon advertised the land for sale under the terms of the deed of trust; and at a sale on June 13, 1929, it was purchased by the Residence Company at the price of $27,500. The sale was advertised as being for cash, but the Residence Com-

pany did not actually pay cash. Instead, it executed to the Title Company its notes for $35,000 secured by a deed of trust to Grice as trustee on the property purchased, which was conveyed to it by a deed simultaneously executed by Grice, as trustee under the deed of trust from Lindsay and Ainsworth. The Title Company thereupon credited the Residence Company with $35,000; and that amount was set up on its books as a fund with which to pay the notes secured by the Lindsay and Ainsworth deed of trust as they should be presented; $15,000 of these notes were presented and paid, leaving $20,000 outstanding on June 27, 1929, when the Title Company was placed in receivership. On June 18, 1929, the Title Company pledged to the Norfolk National Bank of Commerce & Trusts and the Seaboard Citizens' National Bank $17,000 of the notes executed by the Residence Company, along with other collateral, to secure loans aggregating $20,000 made by these banks. It is admitted that the banks took the notes in good faith, believing them to be secured by a valid first mortgage on the property in question. The controversy over the proceeds of the property sold is between the banks as holders of these notes and the holders of the notes secured by the Lindsay and Ainsworth deed of trust.

In case No. 3124 it appears that one Dalton had executed to the Title Company notes aggregating $4,100 secured by deed of trust to Grice. Of these notes $300 matured August 15, 1928 and $3,800 August 15, 1930. They were guaranteed by the Title Company, and were sold to one Borum and one Gilliam, whose executors are the appellants in this case. When the $300 of principal notes fell due, there was default by the maker, and the Title Company paid them and held them with certain interest coupons which it had paid. In May, 1929, there was default by the maker, not only as to the payment of the $300 principal notes, but also as to interest and taxes; and the trustee was directed by the Title Company to proceed with the foreclosure of the deed of trust. The property embraced therein, having been duly advertised, was sold on May 23, 1929, to the Residence Company for $3,700, and a deed in due form was executed by Grice, as trustee, conveying it pursuant to the sale, and reciting that the consideration had been paid. On June 1, 1930, the Residence Company executed to the Title Company notes for the sum of $3,600 secured by deed of trust on the property executed to Grice as trustee. These notes, with the exception of one for $1,000, were guaran-

teed by the Title Company and sold to the public, and are now held by persons who acquired them in good faith, believing them to be secured by valid first mortgage and without notice of any equity of the holders of notes secured by the Dalton deed of trust. These holders had no notice of the foreclosure sale, and have never been paid. When the notes and deed of trust were executed by the Residence Company, a credit was set up in their favor on the books of the Title Company, but they knew nothing of this having been done. The controversy is between them and the holders of the notes executed by the Residence Company.

With respect to the regularity of the sales, it appears that each of the notes secured by the deeds of trust contained the following provision: "The maker waives the benefit of homestead exemption and agrees that, in case of default in the punctual payment of any of the annexed interest notes, or in the performance of any covenant on his or her part contained in the deed of trust securing this note, then the trustee in said deed of trust may, and if requested by the holder of this note, shall declare the whole principal secured by said deed due and payable, and proceed to enforce the said deed according to its terms."

The deeds of trust provided, with respect to defaults in the payment of principal, interest, taxes, or insurance, that: "Upon such default being made, the said trustee shall, so soon thereafter as he shall be requested by the said creditors herein secured, or their assigns so to do, sell the above granted property at public auction, at such time and place, and upon such terms and conditions as he may deem expedient," etc.

The first contention as to the invalidity of the sales is that they were unauthorized because foreclosure was not requested by all of the holders of the notes secured, as it is contended was required under the conditions contained in the deeds of trust, and that the indebtedness was not declared due under the acceleration clause of the notes as prescribed in the conditions therein contained. We think, however, that there can be no question but that the sales by the trustee were fully authorized. There had been default in the payment of interest and taxes and request for foreclosure by one of the creditors secured. The provisions of the notes and the deed of trust securing same must be construed together (Indiana & I. C. Railway Co. v. Sprague, 103 U. S. 756, 26 L. Ed. 554); and, when they are so construed, there

can be no doubt that, for default in payment of principal, interest, or taxes, the trustee was authorized, upon the request of the holder of any note secured, to declare all of the notes due and proceed with foreclosure. It is said that the trustee did not declare the notes due; but the advertisement under the deed of trust was, we think, a sufficient exercise of this power.

A more troublesome question arises with respect to the fact that the trustee, instead of demanding cash in accordance with the advertised terms of sale, allowed the Residence Company to give its notes secured by mortgage to the Title Company. It is true that in Virginia the purchaser from a trustee is not required to see to the application of purchase money (Virginia Code of 1924, § 6270); but, if he does not pay the purchase money, and legal title is conveyed to him, he takes it subject to the same equities as attached to it in the hands of the trustee. Here the Residence Company, as a matter of fact, paid nothing to the trustee. Instead of paying the purchase price to him, it merely executed notes to the corporation which owned its stock and controlled its policy. While a credit was thereupon set up on the books of the Title Company in favor of the holders of the original notes, the trustee was neither expressly nor impliedly authorized to accept such credit in payment for the property. Under such circumstances, if this were a controversy between the holders of the original notes and the Residence Company or the Title Company, the legal title would be impressed with the equities existing in favor of these holders.

The controversy, however, is not with either the Residence Company or the Title Company. It is with the holders of notes who took them in good faith, for value and without notice of the outstanding equities, thinking that they were secured by a deed of trust constituting a first lien on the property. The equity of the holders of the notes last mentioned is at least equal to that of the holders of the notes secured by the original deeds of trust, and furnishes a typical case for the application of the principle that between equal equities the law will prevail. 21 C. J. 207; 10 R. C. L. 385; note, 15 L. R. A. (N. S.) 1027, and cases there cited. Furthermore, the wrongful act of the trustee in selling the property and conveying title without obtaining proper payment was made possible by the trust reposed in the trustee by the holders of the notes under the original deed of trust; and consequently a

case arises for the application of another principle of equity, viz., that, where one of two innocent persons must suffer loss by reason of the wrongful act of a third, the one who has made it possible for the third person to occasion the loss must sustain it. Atlantic Life Ins. Co. v. Rowland (C. C. A. 4th) 22 F.(2d) 126, 130; Cleve v. Craven Chemical Co. (C. C. A. 4th) 18 F.(2d) 711, 715, 52 A. L. R. 980. As said by Judge Rose, speaking for this court, in Norton v. City Bank & Trust Co., 294 F. 839, 845: "In such cases as that here involved, it is true that the agent has proved false to his trust, and some innocent person must be the loser. Should it not be the one who gave him the power which he misused?"

The case of Williams v. Jackson, 107 U. S. 478, 2 S. Ct. 814, 818, 27 L. Ed. 529, is directly in point. In that case owners of property had conveyed the legal title to trustees to secure the payment of notes contemporaneously executed, which were transferred to a bona fide holder for value. Subsequently the trustees, without authority from the holder of the note, released the deed of trust in favor of the grantor, who thereupon executed a new note and deed of trust on the same property; one of the trustees thereunder being one of the trustees who had joined in wrongfully releasing the original deed of trust. The note thus secured was delivered for value to a lender, one Williams, who had no notice of the transfer of the note secured by the first deed of trust or that same was unpaid. After sale under the second deed of trust, suit was brought by the holders of the notes secured by the first to have them declared a lien upon the property. In holding that they were not entitled to relief, the court said:

"Williams is admitted to have had no actual knowledge that the notes secured by the first trust deed were held by the plaintiffs, or that they were unpaid. The knowledge of those facts by Charles T. Davis, through whom Williams made the loan, does not bind him, because upon the evidence Charles T. Davis appears not to have been his agent, but the agent of Sweet and wife. * * *

"To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud, or gross or willful negligence on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business. Hine v. Dodd, 2 Atk. 275; Jones v. Smith, 1 Hare, 43, and

1 Phill. 244; Agra Bank v. Barry, Irish R. 6 Eq. 128, and L. R. 7 H. L. 135; Wilson v. Wall, 6 Wall. 83 [18 L. Ed. 727]; Norman v. Towne, 130 Mass. 52.

"The equity of Williams being at least equal with that of the plaintiffs, the legal title held for Williams must prevail, and he is entitled to priority."

In Evans v. Roanoke Savings Bank, 95 Va. 294, 28 S. E. 323, 324, the Supreme Court of Appeals of Virginia dealt with a case involving the rights of the holders of notes secured by a deed of trust, which had been released by the trustee, as against the rights of a bona fide holder for value of notes subsequently executed and secured by deed of trust on the same property. The equity of the holder of the notes secured by the second deed of trust was held equal to that of the holder of the original notes and the doctrine applied that as between them the legal title held for the benefit of the notes subsequently issued would prevail. The court quoted at length from the opinion in Williams v. Jackson, including the paragraphs which we have quoted above, and, referring to the release of the first deed of trust in the case under consideration, said: "The result of it is that the deed to secure the notes held by the Roanoke Savings Bank was by these transactions released, so far as the Covenant Building & Loan Association is concerned; and that association, being an innocent purchaser relying upon the public record, stands to-day before the court with an equity equal to that of the Roanoke Savings Bank, and with a legal title vested in the trustee for its benefit."

It is properly conceded in the case at bar that the deed from the trustee conveyed legal title to the Residence Company. Taylor v. King, 6 Munf. (Va.) 358, 8 Am. Dec. 746; Den ex dem. Canoy v. Troutman, 30 N. C. (7 Ired.) 155; Williams v. Jackson, supra, 107 U. S. at page 482, 2 S. Ct. 814, 27 L. Ed. 529; 41 C. J. 1012, 1013 and cases there cited. And it follows, of course, that, after this conveyance, the deed of trust from the Residence Company to the trustee vested the legal title in him. It is argued, however, that, as the trustee had notice of the equities of the holders of the prior notes, he took the legal title subject to these equities, and that under the law of Virginia notice to him was notice to the holders of the subsequent notes, with the result that they cannot be held to be without notice, and consequently holding an equity equal to the holders of the prior notes. The question

thus raised is not a question of title, as to which we would, of course, be bound by the Virginia decisions, but is a question of general law, wherein we follow the decisions of the courts of the United States. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Marshall County v. Schenck, 5 Wall. 772, 784, 18 L. Ed. 556; Oates v. Nat. Bank, 100 U. S. 239, 25 L. Ed. 580. Under the federal rule, knowledge of the trustee, in a case such as this, is not to be imputed to a bona fide holder for value of the note secured. The very point was decided by necessary implication in the case of Williams v. Jackson, supra, where the trustee had knowledge of the wrongful character of the release of the prior deed of trust, and it was held that the holder of the notes secured by the deed of trust to him was a holder without notice.

It must not be overlooked that the holders of the notes of the Residence Company here involved were not the original holders or mortgagees, but were holders for value and without notice by transfer from the Title Company. It is the well-settled rule of the federal courts that such a holder takes, not only the notes, but also the rights under a mortgage securing same, freed of the equities which might have been asserted against the original mortgagee. Carpenter v. Longan, 16 Wall. 271, 21 L. Ed. 313; Kenicott v. Wayne County, 16 Wall. 452, 469, 21 L. Ed. 319; Sawyer v. Prickett, 19 Wall. 146, 22 L. Ed. 105; Chicago Railway Equipment Co. v. Merchants' Bank, 136 U. S. 268, 283, 10 S. Ct. 999, 34 L. Ed. 349; Peninsula Bank v. Wolcott (C. C. A. 4th) 232 F. 68, 70, Ann. Cas. 1918C, 477, and note.

The case last cited was a decision of this court in a case arising under a Virginia deed of trust. One of the notes secured thereby had been transferred to a bank which took it without notice of outstanding equities. In upholding the rights of the bank to the security of the deed of trust freed of defenses, the court, speaking through Judge Woods, said: "The notes were negotiable, and the Bank of Williamsburg took and held them as bona fide indorsees. This indorsement carried with it the security of the deed of trust. The authorities at one time were in serious conflict on the question whether the indorsee of a negotiable note took the mortgage given to secure it subject to defenses which might have been set up against the original mortgagee; but it is now well settled by the great weight of authority that the indorsee of a negotiable note takes the mortgage given to secure it, if valid on its

face, as he takes the note, freed from defenses which might have availed against the original mortgagee."

For the reasons stated, the decrees appealed from will be affirmed.

Affirmed.