# Vann *v.* Marbury.

*Bill in Equity by Transferree of Mortgage Note to set aside Mortgagee's Fraudulent Cancellation of Mortgage and to Enforce Lien of Mortgage.*

1. *Holder of negotiable paper as collateral security for pre-existing debt not a bona fide purchaser.*—In this State the holder of negotiable paper as collateral security for a pre-existing debt is not a *bona fide* holder for value, nor entitled to protection against equities or defenses existing between prior parties of which he had no notice, but such paper is open in the hands of such holder to all defenses which could have been made against it while in the hands of the original owner.

2. *Unindorsed negotiable paper subject in hands of transferree to equities between original parties.*—Negotiable paper assigned before maturity, unless payable to bearer, or indorsed, is subject in the hands of the assignee, until the debtor is notified of the assignment, to the same equities as would have affected the party from whom it was received.

3. *Forbearance as a consideration for transfer of collateral.*—Where there was evidence that the transfer of a mortgage note to complainant was in consideration of indulgence by him to the mortgagee, or transferrer, on an antecedent debt, the transferree is not a *bona fide* holder if the evidence does not show such a clear, definite and certain agreement as to the terms and time of the forbearance as to constitute an independent consideration for the transfer.

4. *Payment by mortgagor to mortgagee of mortgage note without production of note.*—The payment by the mortgagor to the mortgagee of a non-negotiable note, secured by the mortgage, before or after its maturity, without notice of its transfer, will protect the mortgagor against suit on such note by the transferree although the note was not produced and delivered up at the time of the payment.

5. *Same; burden of proof as to notice of transfer.*—Where the mortgagor pays to the mortgagee a non-negotiable note secured by the mortgage, without the production or delivery of the note, in a suit by the transferree of the note against the maker, such payment being shown, the burden of proof is on the plaintiff to show that the maker had notice of the transfer at the time of making such payment.

6. *Notice by letter of transfer of note.*—Evidence that the attorney of the transferree of a mortgage note mailed to the mortgagor a notice of such transfer, addressed to the mortgagor through the post office, and that the letter was never returned to him, although his name and address were on the envelope, shows, at most, only a case of *prima facie* notice which is overcome by the positive denial of notice by the mortgagor.

7. *Purchase of mortgaged property without notice of transfer of mortgage note.*—Where a mortgagee delivered to plaintiff, without indorsement, a mortgage note as collateral security for an antecedent debt, and the mortgagor paid the mortgage to, and procured its cancellation by, the mortgagee, without notice of the transfer of the note, and sold the mortgaged premises to her co-defendant, who purchased in good faith, the mortgagee representing that he was the owner of the

[Vann v. Marbury.]

note and that it was temporarily mislaid; the plaintiff can not subject the mortgaged property to the payment of such note.

8. *Same; case at bar.*—Where the evidence showed that the mortgagor received the consideration for the conveyance of the mortgaged property, delivered the deed to the grantee, paid the mortgagee the amount due on the mortgage on the faith of the mortgagee's statement that the notes and mortgage were at his office, that the mortgagor and grantee's agent went with him to his office where he delivered to the mortgagor one of the notes and the mortgage, and a receipt for the note in question, which the mortgagee said was misplaced, the receipt reciting that the note was in the hands of an attorney, but such agent did not read the receipt or learn that the note was in the hands of any person other than the mortgagee; on this evidence neither the mortgagor nor the purchaser of the property had knowledge of sufficient facts to charge them with notice of the transfer of the note to plaintiff.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellee, as transferree of a mortgage note, against appellant, and prayed that the chancellor ascertain the amount due upon the note, that the complainant be held to have a lien on certain described land for such amount, and to set aside the cancellation of a mortgage on said land, securing said note, executed by the defendants, Harriet and W. B. Moore, to the defendant, W. J. Vann, that the mortgage be re-established as to complainant's claim, and for a decree of foreclosure for the payment of such amount as was ascertained to be due on said note. The material facts, as shown by the record, bearing on the principal question presented, are sufficintly stated in the opinion. The chancellor, on the final hearing upon pleadings and proof, decreed that the complainant was entitled to the relief prayed. The defendants bring this appeal, and assign such decree of the chancellor as error.

LANE & WHITE, and W. R. HOUGHTON, for the appellant.

WARD & JOHN, for the appellee.

STONE, C. J.—Many of the assignments of error are based on the objections of appellant to portions of the testimony offered by appellee. Without ruling specifically on the objections the Chancery Court rendered a decree on the merits in favor of appellee. We shall consider only the substantial controversy as shown by the record, and, in doing so, will look alone to the legal testimony to determine whether or not it authorizes the decree from which the appeal is taken.

[Vann v. Marbury.]

·The controversy as it comes before us in this record is mainly one of fact and arises out of the following circumstances: In December, 1886, Vann sold and conveyed a tract of land near Birmingham, Ala., to Harriett Moore, in consideration of the sum of $4,000.00, of which $1,333.33 was paid, cash, and for the balance Mrs. Moore and her husband executed and delivered their two joint notes for $1,333.33 each, both dated December 27, 1886, payable, respectively, at 12 and 24 months from date and secured by a mortgage on the land. The mortgage recites an indebtedness of $2,666, one half due December 27, 1887, and the other due December 27, 1888, and was duly recorded. On the 1st day of June, 1887, Vann transferred the first of said notes to Marbury as collateral security for an antecedent debt owing by the former to the latter.

It is claimed by appellee that notice of this transfer was given by his, Marbury's, attorney to Mrs. Moore, at the time of the transfer, or shortly thereafter, by a letter addressed to her at Birmingham or Avondale (the witness being uncertain which), but stating that the envelope had his name printed thereon and that the letter was never returned to him.

Afterwards, to-wit, Oct. 24, 1887, Mrs. Moore believing she would not be able to meet the notes, and before either of them had matured, sold the property to the Woodlawn Cemetery Company for $4,158. Of this sum $358 was paid to her in cash and $3,800 in stock of said company; $1,000 of the stock she retained and the remaining $2,800 of stock was, contemporaneously with its payment to her, transferred by her to Vann. Vann, Mrs. Moore, Erswell and Nash were present at the conclusion of the trade, the two latter being respectively president and secretary of said Woodlawn Cemetery Company. When the money and stock were paid, Vann agreed to go at once to the court-house and cancel the mortgage on the records. He also stated that the mortgage and notes were at his office, and requested Mrs. Moore to go with him from Erswell's office to his office where he would deliver the papers to her. Mrs. Moore and Nash, both, went with Vann to his office, where he got the mortgage and one of the notes (the last note), and gave them up to Mrs. Moore, saying, that the other note (the one in controversy) was mislaid and that he would get it for her in a day or two. He gave Mrs. Moore a receipt against the last mentioned note, in which receipt it is recited that the note was then in the hands of W. C. Ward, but it does not appear that this receipt was shown to Nash or that he knew of this recital

therein.  Vann afterwards made various excuses for not delivering up the note.  Mrs. Moore denies ever having received notice of the transfer of the note, and the Woodlawn Cemetery Company also denies notice that appellee held the note or claimed any interest in it, and also of all the facts that might put it on inquiry.

Vann did not in fact cancel the mortgage on the records for some months after the payment; he, on one occasion, told Mrs. Moore that he had done so, but she, finding the statement to be false, required him to go to the records with her and make the proper entry of satisfaction.  He is not examined by either party as a witness.

The question argued by counsel as to whether or not the note transferred by Vann to Marbury is negotiable is not a material one for several reasons.  In the first place it was transferred to Marbury as collateral security for an antecedent debt Vann owed him.  The doctrine in this State is that the holder of negotiable paper as collateral security for a pre-existing debt is not a *bona fide* holder for value, nor entitled to protection against equities and defenses existing between prior parties, of which he had no notice, but that such paper is open in the hands of such holder to all the defenses which could have been made against it while in the hands of the original owner.—*First Nat'l Bank v. Johnston*, 97 Ala. 655.

In the next place it no where appears from the record that the note was indorsed by Vann to Marbury so as to carry the legal title.  Even negotiable paper assigned before maturity, unless payable to bearer, or indorsed, will be subject in the hands of the assignee, until the debtor is notified of the assignment, to the same equities as would have affected the party from whom it was received.  The rule, in such cases, applicable to both non-negotiable and negotiable paper has been well stated as follows:  "When the written evidence of indebtedness is non-negotiable or *overdue*, indorsement will not obviate the necessity of notice ; but when negotiable paper requiring indorsement is assigned by delivery, notice has been held necessary to perfect the assignment."—Wade on Notice, § 442.

It is true the testimony tends to show that the transfer of the note as collateral was in consideration of indulgence granted by Marbury to Vann on the debt for the security of which the note was so transferred, but the testimony does not show such a clear, definite and certain agreement either as to the terms or time of the forbearance as to constitute an independent consideration for the transfer which would

[Vann v. Marbury.]

give the transferree the rights of a *bona fide* holder for value without notice.   Whether or not, therefore, the note in controversy was, or was not negotiable paper, the whole question is one of notice.

Did Mrs. Moore, before, or at the time of making payment of the note to Vann have notice of the transfer of the note to Marbury ?   And did the Woodlawn Cemetery Company at the time or before making payment of the purchase money to Mrs. Moore and to Vann have notice of such transfer or of any fact sufficient to put it on inquiry ?

In the absence of notice to Mrs. Moore of the transfer of the note to Marbury the payment made by her to Vann would be a complete protection to her against this suit, notwithstanding the note was not produced and delivered up at the time of such payment.

In *Hart v. Freeman*, 42 Ala. 568, we said, "the maker of a promissory note, not negotiable, may pay the same to the payee after its maturity, even though the note be not produced and delivered up at the time of payment, provided the maker has had no notice of the indorsement or transfer of the note to a third person.   And such payment would be a valid and competent defense against the note, should it afterwards appear and suit be brought thereon against the maker by another holder."   It was further held in that case that the burden of proof rests upon the plaintiff in the action, the defendant having proved the payment, to show that the defendant had notice of the transfer or indorsement before the payment was made.   We can not perceive that the fact that payment of the note in controversy, was made before maturity, takes the case without the influence of the decision in *Hart v. Freeman, supra.*

The testimony in the record shows that both Mrs. Moore, the maker of the note, and the Woodlawn Cemetary Company deny all notice of the transfer of the note by Vann to Marbury.   On the other hand, W. C. Ward, attorney for Marbury, testifies that he notified Mrs. Moore of the transfer of the note to Marbury at the time, or shortly after, it was made, by addressing her and her husband a letter through the post office at Birmingham or Avondale, (the latter according to the best of his recollection), and that the letter was never returned to him although the envelope in which it was enclosed had his name and address thereon.

If we may take judicial cognizance of the postal regulation, or custom to return undelivered letters to sender, when there is a printed or written request to that effect and the address of the sender on the envelope, we can not consider

this testimony as satisfactory or conclusive on the question of notice of the transfer of the note, in the face of Mrs. Moore's positive denial of notice, and the further fact that the burden of proof rests upon the complainant to establish notice. In the first place the witness does not state the postage was prepaid on his letter. In the second place it appears from Mrs. Moore's testimony that she, at the time the letter was sent, received her letters from the Birmingham post office instead of at Avondale where she resided. In the third place, if it had been stated by Mr. Ward that his letter was sent postage prepaid, and to the proper office,. it would simply have made out a *prima facie* case of notice, which is overcome by the positive and unequivocal denial of Mrs. Moore that she ever had notice of such transfer. We discover nothing in the testimony which disentitles her to full credit as a witness, and in accepting her denial of having received notice we do not in any wise discredit the testimony of Mr. Ward. The testimony of the two can be reconciled upon the theory that Mr. Ward's letter went to the post office at Avondale where Mrs. Moore was not accustomed to receive her letters, or that the letter was not prepaid or was lost in the Birmingham post office or delivered to some person who failed to hand it to her.

Appellee further insists, however, that both Mrs. Moore and the Woodlawn Cemetery Company were either notified of the transfer of the note or acquired knowledge of facts sufficient to put them on inquiry at the time the payment by Mrs. Moore was made and the purchase by the Woodlawn Cemetery was concluded; that the receipt itself, given by Vann to Mrs. Moore on that occasion recited that the note in controversy was then in the hands of W. C. Ward.

A careful review of the testimony fails to satisfy us that this contention is supported by the proof. On the contrary Mrs. Moore swears "Vann did not say my note was out when he made the trade but said so when he delivered my paper. When I delivered the deed to Erswell, Vann did not tell me that the note was out. The note was handed me in Vann's office. I never heard him say anything in presence of Erswell about the note being out, and nothing in that of Nash except in his office." Nash in his testimony shows that the money and stock were paid to Mrs. Moore and the deed delivered by her to Erswell in his office before Mrs. Moore, Nash and Vann went to the latter's office, and we think it appears this was all done on the faith of Vann's statement that the notes and Mortgage were in his office. Nash says, "Mr. Erswell, Mr. Vann, Mrs. Moore and myself were the

[Vann v. Marbury.]

parties present at Mr. Erswell's office when the payment was made. The notes and mortgage were at Mr. Vann's office, so he said at the time. I went up to Mr. Vann's office with Mrs. Moore when she received one note and the mortgage I think; she also received a receipt for the other note which he said was then misplaced but he would surrender it in a day or so. Later on he made various statements as to the note," &c. And again on cross-examination he says, "I was present when Mrs. Moore executed the deed to the W. C. Co. Mrs. Moore was paid $358.00 cash, and $3,800 in stock, and she paid Vann $2,800.00 stock, the W. C. Co. paid him nothing. *After the stock had been transferred to Vann by Mrs. Moore* she demanded the notes from Vann and she went up to Vann's office to get them, but she only received one and a receipt for the other. He said that note was then misplaced and promised to deliver it to her in a day or so; am quite sure he did not say it was in Ward's hands or any other person's hands at that time."

Erswell is also examined and corroborates Nash as to the conclusion of the trade at Erswell's office, and the statement then made by Vann that the notes were at his office, and the fact that Vann, Mrs. Moore and Nash left Erswell's office to go to Vann's office. We cannot discover from the testimony that Nash read the receipt given by Vann to Mrs. Moore, for the note in controversy, or that Nash there learned any fact which would have put him on inquiry unless it was the one fact that the note here in suit, was not actually produced and surrendered.

So far as the Woodlawn Cemetery Company is concerned, it not appearing that the receipt showing that the note was then in Ward's hands was shown to Nash, we think the statements made by Vann, in the hearing of Nash, both at that time and at Erswell's office that the note was mislaid and would be surrendered in a day or two, disarmed all suspicion on Nash's part that the note had been transferred. Indeed, if inquiry had been excited, of whom would he have made it? He could not have gone out into the community generally to make such inquiry: He could have gone to no one except to the mortgagor and mortgagee, and and it is apparent that inquiry of either of them would have been unavailing, in the light of the testimony in this record. And so far as Mrs. Moore is concerned it may be said that the statements of Vann to her before and accompanying the delivery of the receipt for the note, might justly be said to have disarmed any suspicion which, without such statements, the recital in the receipt that the

[Vann v. Marbury.]

note was in Ward's hands ought to have excited in her mind.—*Brown v. Blydenburg,* 7 N. Y. 142-146.

It is to be observed this receipt does not recite that the note had been transferred to Ward, but that it was in his hands. If this recital stood alone it may be it was sufficient to put Mrs. Moore on inquiry and that she would be charge-able with notice of all facts inquiry from Ward would have elicited ; but in connection with Vann's statements at the time of the payment and, also, accompanying the delivery of the receipt the most natural inference Mrs. Moore could have drawn from such recital in the receipt would have been that the note was in Ward's hands not as transferee but as agent for Vann and that it had been mislaid.

We see no escape from the conclusion that Vann's declar-ations and conduct were intended, and naturally had the effect, to quiet suspicion and prevent inquiry by Mrs. Moore and the officers of the Woodlawn Cemetery Company, and sufficiently excused their failure to demand the production and surrender of the note.—*Brown v. Blydenburg, supra;* 1 Jones on Mort. § 791; *Van Kennen v. Corkins,* 6 N. Y. Sup. Ct. Rep. 355.

The question with which we have mainly to deal, in this case, is not whether the mortgage can be enforced as to this note against Mr. and Mrs. Moore, or whether they are liable personally to Marbury on the note, but whether the note is enforceable in this suit as a lien on the land as against the Woodlawn Cemetery Company, the purchaser of the land. Its attorney examined the title and found no en-cumbrance except the mortgage from Mrs. Moore and her husband to Vann securing the two notes. So far as the record showed, therefore, Vann was the proper party to whom payment of the mortgage debt should be made and who had the right to cancel the mortgage. In *Ogle v. Turpin* 102 Ill. 148 it is said : "There is no presumption of law that the payee of notes secured by mortgage has transferred the notes before purchasing the equity of redemption from the mortgagor, and a person taking a mortgage from the payee will not be held chargeable with notice that the notes secured in the first mortgage, although not due, have been assigned, but he may rely upon the record as showing title in his mortgagor." This we think to be the correct rule, except where the mortgage shows upon its face the nego-tiable character of the notes it secures, in which event it might be encumbent on a subsequent purchaser to inquire as to whether the notes have been assigned.—*Keohane v. Smith,* 97 Ill. 156 ; 1 Jones on Mortg. § 814.

[Vann v. Marbury.]

The mortgage before us does not describe the notes or otherwise indicate their character. In the absence of proof of notice to the Woodlawn Cemetery Company of the transfer of the note to Marbury, or of facts sufficient to put it on inquiry, the principles which govern the respective rights of Marbury and said Company in this controversy may be briefly stated as follows : By the transfer of the note from Vann to Marbury, under the circumstances above shown, the latter acquired an interest in the mortgage security which he was entitled to assert as against both the mortgagor and the mortgagee so long as the security subsisted. This being so, the cancellation of the mortgage on the records by Vann, it cannot be doubted, was a fraud upon the rights of Marbury and the latter's rights remained unaffected as against all parties participating in, or cognizant of, the fraud.

But as between Marbury and the Woodlawn Cemetery Company the question here presented is whether Marbury's rights are such that they can be asserted against a *bona fide* purchaser from the mortgagor, who without notice of the claim of Marbury has parted with its money relying upon the payment and cancellation of the only claim upon the land disclosed by the record, and which payment was made to, and cancellation made by, the party whom the record showed to be the proper party for such purposes.

As we have said the transfer of the note vested in Marbury no legal title to the land but simply an equity. The legal title to the conditional estate in the land remained in Vann as fully after the transfer as before. This legal title, it may be, he held in trust for Marbury to the extent of the note held by the latter, but it was a trust not appearing from the mortgage itself, or by any record, but a latent trust which could not affect the rights of *bona fide* purchasers who, in ignorance of its existence, relied on the acts and declarations of the mortgagee within the scope of his apparent powers as legal owner of the mortgage; and any such acts of the mortgagee as would work an estoppel as against him, would be equally effective against the holder of a latent equity arising from contract with the mortgagee.— *Ex't'rs of Swartz v. Leist*, 13 Ohio St. 419.

Without discussing the question further our conclusion is that Marbury, being a holder of the note as collateral security for an antecedent debt, and the mortgage failing to show that the note was negotiable, and the payment of the entire mortgage debt having been made by Mrs. Moore, and the purchase made by the Woodlawn Cemetery Company,

[Hill v. Birmingham Union Railway Co.]

without notice by either of the transfer of the note, and in reliance upon the fact that the payment was made to, and the surrender of the mortgage by, the party whom the record showed was the proper party, and who then represented himself as the owner of the note and that it was temporarily mislaid, such payment and purchase defeat the right of the transferee, Marbury, to subject the land to the payment of the note, notwithstanding the failure of Mrs. Moore and the officers of the Woodlawn Cemetery Company to require the production and surrender of the note at the time of such payment and purchase.

The decree of the Chancery Court is not in accordance with our conclusion. It is, therefore, reversed and a decree will be here rendered denying relief to the complainant in the court below and dismissing the bill of complaint.

Reversed and rendered.