# CHARLESTON.

A. B. THOMPSON *v.* F. H. BENNETT, JR., *et als.*

(No. 6078)

Submitted February 8, 1928.    Decided February 14, 1928.

1. MORTGAGES—*Assignee of Notes Secured by Trust Deed, if Not Estopped, Held Entitled to Set Aside Assignor's Fraudulent Release of Lien as Against Subsequent Mortgagee.*

In 1915 a lot of land is encumbered by a deed of trust securing payment of certain negotiable promissory notes, five of which were assigned for value to plaintiff and were due in the early part of 1925. In 1917, the original owner of the notes without the knowledge or consent of plaintiff executed to the owner of the lot a release of the trust deed lien, stating that the debt therein had been fully paid and satisfied, although the five notes assigned by him to plaintiff were not due and had not been paid. Later in 1926, a subsequent purchaser of the lot borrowed money from appellants and secured the loan by deed of trust on the lot. In such case plaintiff was entitled to set aside the release executed in fraud of his rights, and have priority in payment of his lien over the lien of appellants, subsequently acquired, in the absence of conduct on part of plaintiff amounting to an estoppel. Points 1, 2 and 3 Syl. *Citizens National Bank* v. *Harrison-Doddridge Coal & Coke Co.*, 89 W. Va. 659, approved and applied. (p. 192.)

(Mortgages, 41 C. J. § 935.)

2. LIENS—*Lien Creditor's Failure to Assert Debt Within One Year After Maturity Held Not Laches, Barring Right to Prior Lien Absent Showing of Prejudice to Subsequent Lienor.*

The fact that a creditor does not assert his debt secured by a lien for a period of one year after it becomes due, un-

accompanied by any negligence or knowledge on his part or circumstances showing that by his delay a subsequent lienor's rights were induced or prejudiced, does not constitute laches on his part barring his right to prior lien.   (p. 195.)

(Liens, 37 C. J. § 60.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Mercer County.

Action by A. B. Thompson against F. H. Bennett, Jr., and others.   Decree for plaintiff, and defendants appeal.

*Affirmed.*

*Walter B. Ross, W. E. Ross* and *Robt. Baker,* for appellants.

*Luther G. Scott,* for appellee.

LIVELY, JUDGE:

This appeal brings up a controversy between two lienors who were decreed lienors upon the real estate of Emory R. Kilgore situate in Bluefield, Mercer County. The decree complained of adjudged that plaintiff below, A. B. Thompson, held the first lien amounting to $165.38, and that appellants, Alexander Parker and Walter V. Ross, trustees, held a second lien thereon, and ordered that the property be sold in satisfaction of Thompson's lien.

It appears that F. H. Bennett, Jr., owned this lot of land in Bluefield, and on May 22, 1916, deeded it to T. F. Coates, taking from him as part payment certain negotiable notes, the last five of which, each for $20.00, and due respectively on the 22nd day of January, February, March, April and May, 1925, were assigned to plaintiff, A. B. Thompson, a real estate broker who had negotiated the sale, for his services as such broker. Simultaneously with the execution of this deed Coates secured payment of his notes by deed of trust on the property to A. B. Thompson. The deed and deed of trust were promptly recorded. On October 3, 1917, Bennett released to Coates the lien on the deed of trust stating in the release that the obligation secured thereby had been paid, or discharged. At that time Thompson held the five notes,

which were not due and which were secured by this deed of trust so released. On September 10, 1917, Coates deeded the property to T. J. Ranson, who on May 1, 1926, executed a deed of trust on the property to appellants Alexander Parker and Walter V. Ross, trustees, to secure notes in the aggregate sum of $2,250.00, made payable to bearer at a bank in Richmond, Virginia, which notes appear to have been the property of the Atlantic Life Insurance Company of Richmond at the time of the decree. On August 10, 1926, Ranson and wife conveyed the property to Lila B. Staples who afterwards on September 10, 1926, deeded the lot to Emory R. Kilgore, the present owner; who, on that date, executed another deed of trust to D. M. Gregg to secure her, Lila B. Staples, in the payment of $2,201.25.

Thompson instituted this suit to the first Monday in February, 1927, against Bennett and the various persons above mentioned as owning or having an interest in the lot, for the purpose of setting aside as unauthorized and fraudulent the release of the deed of trust executed by Bennett on October 3, 1917, releasing the deed of trust of May 22, 1916, which secured his five notes, and for the purpose of re-instating and enforcing his lien thereunder. He charges that the release was executed and recorded without his knowledge or consent and that it was in fraud of his rights and invalid and ineffective in so far as his five notes were concerned. It appears that Bennett and Coates have left the State and their whereabouts are unknown. Lila B. Staples, Parker and Ross, trustees, filed separate answers, the substance of which, is, that their rights were acquired in the property after Thompson's notes were due and that they relied upon the county records in acquiring their respective interests in the property, which records showed that it was free and clear of the Coates deed of trust and that if these notes were then unpaid respondents had no knowledge of that fact and were therefore innocent *bona fide* purchasers without notice of the lien. No evidence was taken, but it was stipulated, that plaintiff was not required to prove that Bennett had indorsed and transferred to him the five notes payable as above set out and that

said notes were the property of Thompson all past due and entirely unpaid.

From the foregoing statement it will be seen that plaintiff Thompson was the owner of these five notes at the time the deed of trust securing them on the property was released by Bennett in 1917 without the knowledge or consent of Thompson; and that subsequent thereto appellants acquired a lien on the property to secure a loan made to a subsequent owner, relying upon the release executed by Bennett and upon the fact that they made their loan after Thompson's notes were all due. Which of these two lienors is first in dignity and priority? That is the legal question concisely stated which is presented on this appeal.

That Bennett had no authority to release the deed of trust which secured the notes assigned by him to Thompson and that such release was a fraud in law upon Thompson's rights, has been determined in our recent case of *Bank* v. *Coal Company,* 89 W. Va. 659. The record respecting the title to the lot showed that the trust deed was given to secure promissory negotiable notes none of which were due at the time Bennett attempted to release the lien. Subsequent purchasers or lienors were required to take notice of the fact that an assignment of these notes so secured assigned *pro tanto* the security of the deed of trust to that extent. As the law then was, it was the duty of a subsequent purchaser or lienor to ascertain if the original creditor, Bennett, still had the notes at the time he released the lien which secured them, or whether those notes had been paid. Judge POFFENBARGER in the above cited case well states the duty of a subsequent purchaser under such circumstance. He said: ''A purchaser is bound to take notice of everything the record discloses. When a lien secures notes or bonds, he knows they are assignable and may have been assigned. Hence, if he relies upon a release by the original creditor and looks no further, he closes his eyes to the probability that some of the notes or all of them may be unpaid and in the hands of assignees. The deed of trust is not, in such case, the primary evidence of the debt, and the release constitutes no certain proof that such evidence, the note or bond, has been surrendered. He must ascertain if

the original creditor still has the notes or whether they have been paid.'' Appellants were not innocent creditors at the time they took their subsequent lien. They were charged with notice of the prior lien of Thompson, and that it might be asserted if not paid. In the Bank case the deed of trust was executed on December 11, 1907, to secure notes in the sum of $200,000.00 due December 1, 1908. On the day of the execution of the deed of trust four of the notes aggregating $40,-000.00 were assigned; and afterwards on January 14, 1910, the beneficiary under the deed of trust executed a release. Subsequently in 1912 the property was encumbered by another deed of trust and the beneficiary under the last deed, as in the present case, asserted that the release of record made his lien first in priority. The Bank Case and this case are very similar and the decision in the former controls the latter. We are not disposed to overrule the Bank case above cited.

But it is asserted that plaintiff Thompson is precluded from asserting his lien as prior to that of appellants because he did not promptly enforce the collection of his notes at the time the last one became due on the 22nd day of May, 1925, and by his failure to promptly assert his lien and claim permitted appellants innocently to obtain their lien on May 1, 1926; that is, that he waited from the 22nd day of May, 1925, until after May 1, 1926, when they obtained their lien before he attempted to collect his notes, thereby making it possible for appellants to be misled and to presume from his silence that the release of the deed of trust of 1917 was valid. In other words, they argue that he was guilty of laches which enured to their prejudice and disadvantage. While a lapse of time is always an element of laches and must be considered, yet unless the claim is barred by the statute of limitations there is no fixed period in which a person must assert his claim or be barred by the doctrine of laches. The length of time always depends on the circumstances of each particular case. 10 R. C. L. p. 396, sec. 143, 144. The question of laches is addressed to discretion of the trial judge and his decision will not be disturbed by the appellate court unless it is so clearly wrong as to amount to abuse of discretion. 21 C. J.

p. 217, sec. 219. There is nothing in the record of this case to show that Thompson knew of the release of the lien securing his notes until he attempted to make the collection nearly a year after same became due. There is nothing to show that he knew that appellants were proposing to loan money on the property and would acquire a lien thereby knowing that his prior lien had been released. The claim of laches is defensive and the burden rested upon appellants to show circumstances, other than mere lapse of time, which would convict defendant of knowingly allowing them to be prejudiced in making their loan. Surely the running of time for nearly a year after the notes became due before assertion of the claim would not of itself convict Thompson of laches. He was accorded the time given by the statute of limitations in which to assert his debt. It might be conceded that if he had known that his lien had been released and that he waited until the condition of appellants had, in good faith, become so changed that they could not be restored to their former state if his right was to be enforced, his delay would be inequitable and operate as an estoppel and when a court of equity sees negligence on one side and injury therefrom on the other it will ordinarily deny relief. *Carter* v. *Price,* 85 W. Va. 744. In no such situation are appellants here. We conclude that the trial chancellor has not abused his discretion in holding that there was no laches on the part of Thompson, and the decree will be affirmed.

*Affirmed.*