# CHARLESTON.

THE BLUEFIELD NATIONAL BANK *et al.* *v.* LOUVICA C. BERNARD *et als.*

(No. 6690)

Submitted September 16, 1930.    Decided October 7, 1930.

460

*McClaugherty & Lewis,* for appellant.

*French, Easley & Easley,* for appellees.

*George Richardson, Jr.,* and *Arthur F. Kingdon,* amici curiæ.

LIVELY, PRESIDENT:

This controversy is between the bank and Mrs. Helvey, each a holder in due course of a bond of Louvica C. Bernard and husband secured by a deed of trust on real estate, on the one side, and Mrs. Scott, appellant, who purchased the real estate from the Bernards, the deed of trust lien having been released by the trustee therein. The validity of the release made by the trustee is involved, and is the controlling question presented. The decree complained of, found the release to be fraudulent and of no effect, and reinstated the trust lien. Mrs. Scott appeals.

On June 3, 1927, the Bernards conveyed the property involved to Ross and Baker, trustees, to secure the payment of the bonds payable to bearer, at three years from date, with interest at 6% payable semi-annually, on December 3rd and June 3rd in each year, evidenced by coupons attached to the bonds. These bonds were dated June 3, 1927, and signed by the Bernards. This trust deed provided for a release in these words: "If the debts hereby secured be fully paid, a good and sufficient release shall be executed by the beneficiaries hereunder, or by W. E. Ross, one of the trustees, who is hereby authorized and empowered to execute such release upon satisfactory evidence being produced to him that the said obligations have been fully paid, which release shall be at the costs and charges of the parties of the first part." These bonds were turned over to Ross, the understanding between him and Bernard being that Ross would advance money to

Bernard as he was able to dispose of the bonds. (Neither plaintiffs nor defendant Scott knew of the understanding between Bernard and Ross). Ross took a thousand dollar bond and pledged it to the bank, as collateral security for payment of a large debt owing by him to it, a short time after the trust began, and pledged a two thousand dollar bond to plaintiff Helvey as collateral to secure a note executed to her by him a short time after the trust began. On May 22, 1928, a sale of the real estate from Bernards to defendant Sarah A. Scott was agreed upon, and a deed was tendered to her dated and acknowledged that date, which she declined to receive until her counsel reported on the title. She paid down on that date $500.00, and later, on June 6th, following, she paid in cash the remainder of the purchase price of $7,000.00, took the deed and recorded it on that day. In the meantime, between the 22nd and 25th of May, her attorneys reported to her that the deed of trust was on the property. Before she paid the balance of purchase money and accepted the deed on June 5th, her attorneys reported to her that the trust deed had been released. It appears that Bernard and Ross went together to the county clerk's office on May 25th, where Ross signed and acknowledged the release, and it was recorded on that day. The release reads: ''I, W. E. Ross, do hereby release that certain deed of trust made by Louvica C. Bernard and A. B. Bernard (giving date and where recorded) the obligation thereby secured having been fully satisfied.'' The bill by the holders of the two bonds charged that the bonds held by them were not paid, that Ross had undertaken to release the trust deed well knowing that neither of the bonds had been paid; that the release had been given without their knowledge, consent or approval and was in fraud of their rights. They prayed for a cancellation of the release, validification of the trust deed, a sale of the property in satisfaction of the bonds, and for general relief. Appellant Scott demurred to the bill, and answered averring that she was an innocent bona fide purchaser, and had paid valuable consideration for the land, relying upon the release executed by Ross, trustee; and that she took title with general warranty and free from encumbrances,

462

exhibiting her deed. The parties went to proof, and upon submission of the cause, the court decreed as above set out.

The evidence demonstrates that Ross and Bernard well knew that the bonds were held by plaintiffs and no part, not even the interest thereon, had been paid at the time the release was executed and recorded. The evidence further shows that plaintiffs were holders of the bonds in due course and knew nothing of the execution and recordation of the release. The evidence also shows that Mrs. Scott knew nothing of the fraud, and purchased in good faith, relying on the recorded release. Ross has committed a fraud on plaintiffs which will deprive them of their security, unless his fraudulent act be set aside. On the other hand, Mrs. Scott, who relied upon the release given by Ross in pursuance of the power and authority vested in him by the trust deed, will suffer to the same extent as plaintiffs if the release be set aside, and the lien reinstated. The fraudulent scheme and act of Ross, not participated in by either the purchaser or the trust deed lienors, and in no way sanctioned or confirmed by either, will cause one or the other of the parties to suffer loss. Which shall suffer? That is the concrete and controlling question presented. Counsel on each side have favored us with exhaustive briefs, and able oral argument.

Appellees argue that because Ross, trustee, fraudulently executed and recorded the release of the trust, the lien of the trust deed continued in force, and Mrs. Scott took the property subject to that lien, relying upon *Thompson v. Bennett,* 105 W. Va. 191, 141 S. E. 784; *Bank v. Coal & Coke Co.,* 89 W. Va. 659, 109 S. E. 892; *Taylor v. Godfrey,* 62 W. Va. 677, 59 S. E. 631; *Fidelity Ins. Co. v. Shenandoah Valley Ry. Co.,* 32 W. Va. 244, 9 S. E. 180, and *Demuth v. Old Town Bank,* 85 Md. 315, 60 Am. St. Rep. 322. The first two cases cited were instances where releases had been executed by the beneficiaries named in the trust deeds, the notes secured having passed from the hands of the beneficiaries to others in due course. The trust deeds on their faces put the subsequent purchaser or lienor on notice that the obligations secured might be in the hands of an assignee in due course and that the beneficiary could not therefore execute a valid release. The subsequent purchasers or lienors were not innocent, for the record warned

them to ascertain if the obligations secured had in fact been paid. The releases, in those cases, under the recitals of the trust deeds, warned the subsequent purchasers and lienors that the persons who released did not have the right; that the notes might have been purchased from the payee by another in due course, thus carrying with them the liens which secured them. The instant case is different, for in this trust deed, power to release is conferred on the trustee upon satisfactory evidence to him that the obligations have been fully paid. *Fidelity Ins. Co.* v. *Shenandoah, supra,* is more nearly in point. In that case the property had been encumbered by first mortgage bonds owned by Central Improvement Company. The mortgage provided that upon payment of the bonds it secured by the grantor according to the provisions in the bonds, they should become void and of no effect, "and satisfaction shall be forthwith duly entered by the said trustee or trustees, for the time being, upon the record of this indenture or mortgage." By a subsequent agreement, the improvement company was to surrender its bonds and take in lieu thereof certain bonds later to be issued. The bonds were delivered to the trustee amounting to $531,000.00 and destroyed by him, but no bonds of the subsequent issue were issued to the improvement company. Upon destruction of the bonds, the trustee executed a release reciting therein that the bonds had been "surrendered". The validity of this release was attacked by a stockholder of the improvement company, and the court held that the mortgage gave right to the trustee to release only upon *payment* of the bonds, and therefore the release reciting "*surrender*" and not *payment or satisfaction,* a subsequent purchaser for value was put on notice and inquiry and was chargeable with knowledge of such facts as a prudent inquiry disclosed. The release was not as broad in its scope as the deed of trust required as a condition precedent to a full release. JUDGE POFFENBARGER said in *Bank* v. *Coal Co.,* 89 W. Va., at page 663: "If the release is as broad in its scope as the deed of trust and specifically covers all of its possible elements, the purchaser ought to be protected by it, and this view is sustained by authority." In *Demuth* v. *Old Town Bank,* cited, one Price sold property to his employee Fowler, and the latter secured therein certain

described notes in a mortgage to Price as a part of the transaction. Simultaneously Fowler reconveyed the property to Price. That reconveyance deed was not recorded until 1891, nearly three years later. The mortgage securing the notes was promptly recorded. A few days later, Price borrowed money from the bank and pledged as collateral the $1000.00 note of Fowler, secured by the mortgage; and that note was never paid. In 1891, Demuth opened negotiations with Price (not with Fowler) for purchase of the property and ascertained that Fowler had reconveyed the property to Price by the deed which had been held from recordation, and which had been executed simultaneously with the mortgage securing the notes. Price told him the mortgage had been paid and exhibited three notes purporting to be those secured by the mortgage. Without inquiry from Fowler, Demuth purchased from Price who then released of record the mortgage, recorded his deed from Price executed in 1888, the deed to Demuth being executed the same day. Demuth did not know the bank held the $1,000.00 note secured by the mortgage, and believed the note shown to him by Price was the one secured. The evidence showed that the note exhibited by Price was not the one described in the mortgage. The court held that the purchaser under these circumstances should have made inquiry of Fowler and should have discovered the spuriousness of the note exhibited by Price, as it did not fully correspond with the note described·in the mortgage. He was not accorded the position of an innocent purchaser. That case is radically different from the instant one.

Appellant relies principally upon the case of *Williams* v. *Jackson*, 107 U. S. 478, 27 L. Ed. 529, and similar cases which have followed and approved it. In that case, a deed of trust had been given to secure payment of described notes, with authority to the trustees to release upon payment of the notes. Soon after the notes were given, the payee and beneficiary under the trust deed transferred them to a third person for full value. One of the notes was paid to the bank by the assignor, but *before the others became due* the trustees and the beneficiary executed and recorded a release of the trust deed reciting that the debt secured had been fully paid and dis-

charged. Subsequently, another trust deed was given on the property to Williams who had, by counsel, examined the title and found it clear. The court held that Williams had the right to rely upon the record and assume that the trustees in executing the release had acted in accordance with their duty. It was held that Williams had taken every reasonable precaution that could have been expected from a prudent man. It was there argued that the *notes were not due,* a fact pointed out by the record of which Williams should have taken notice and made inquiry, and Williams was negligent in not doing so; but the court held otherwise, saying that Williams could rely on the release executed by the trustees and *cestui que* trust and was not bound to inquire of them. The court held that the trustees having authority to release and having done so, the legal title was vested in the grantor who had later conveyed it to another trustee to secure Williams, and that the note secured thereby was entitled to priority of payment out of the land. It is argued that this case has no application to the one at bar, because there was a statute in the District of Columbia, where the land was located, which permitted the assignee of the notes to put on record an assignment of his rights in such form as would notify the world, and that notice of his rights not having been recorded by the holder of the first mortgage notes, the court was influenced in deciding in favor of Williams. The court simply referred to this statute to show. that the assignee of the first mortgage notes could have protected his assignment. Had he done so, litigation would not have followed. That dereliction was not chargeable to Williams, and did not lessen his status as an innocent subsequent encumbrancer. We interpret the decision to be based on the validity of the release which was in strict conformity with the power given in the trust deed, and that Williams was entitled to rely thereon. The opinion says that to charge Williams with constructive notice of the outstanding unpaid notes, ''in the absence of proof of knowledge, fraud, or gross or wilful negligence, on his part, would be inconsistent with the registry laws, with the settled principles of equity, and with the convenient transaction of business.''

The release in question is in conformity with the power to

release, given in the trust deed. While it does not recite that the trustee acted upon "satisfactory evidence produced to him that the obligations have been fully paid", it does say that the obligations secured have been fully satisfied. The release is as broad in its scope as the deed of trust requires. The phrase "fully satisfied", means fully paid. It would be unreasonably critical to give it any other meaning.

The fact that the bonds were not due, and that there was no acceleration clause in the trust deed is pointed out as requiring Mrs. Scott to make inquiry for them before she purchased. This is the strongest point urged by the appellees. But was she not safe in relying upon the trustees' statement duly acknowledged and recorded? When the bank and Mrs. Helvey accepted these bonds as collateral, they were charged with knowledge of the terms of the trust which secured the bonds. By accepting them, they accepted Ross as trustee. They relied on him to carry out its provisions. They had confidence that he would properly do so; at least they so held out to the world. We think Mrs. Scott would be justified in reliance upon him to the same extent. It is not unusual for debts to be paid before maturity. As above stated, the same argument was advanced in *Williams* v. *Jackson, supra,* and the court answered that the innocent subsequent encumbrancer was justified in relying upon the recorded release by the trustees and beneficiary reciting payment of the debts, although they were not due at the time the release was given, and that he was not required to inquire of the truth of the fact recited in the release, although the notes released were not due. We think Mrs. Scott took every reasonable precaution that could have been expected of her. She pursued the usual course to ascertain if the title was clear and free from encumbrance. In *Day* v. *Brenton,* 102 Ia. 482, 71 N. W. 538, the trustee had power to release without joining the beneficiary, on payment of the sum secured, but not otherwise. The trustee executed and recorded a release, reciting the payment ("redeemed, paid off, satisfied, and discharged in full") of the sum secured, although it had not been paid. It was held that a subsequent purchaser in good faith was protected by the release. In that

case the notes secured had matured at the time of the subsequent purchase.

Who placed Ross in position to commit this fraudulent breach of trust? The Bernards selected him to execute the trust and conveyed to him title to the land. The beneficiaries in that trust were the holders of the bonds made payable to "bearer". When the bank and Mrs. Helvey took the bonds as collateral, they assented to and confirmed his appointment, knowing that he had power to release the lien securing their bonds "upon satisfactory evidence being produced to him" that the bonds had been fully paid. Of course, they did not anticipate that he would use that power to their detriment. They imposed confidence in him. For some recondite reason, he has woefully abused that confidence. They left it in his power to do so. Here we have two parties, plaintiffs on the one side and Mrs. Scott on the other, both entirely innocent of any wrong, both acting in good faith, both relying upon the integrity of Ross. Which shall suffer loss? It is a cardinal principle of equity that, "Where one of two innocent persons—that is, persons each guiltless of any intentional moral wrong—must suffer a loss, it must be borne by that one of them who by his conduct, acts or omissions has rendered the injury possible." *N. & W. Ry. Co.* v. *Perdue,* 40 W. Va. 442, 3rd pt. syl. Further citation of authorities for this principle would be superfluous. We think this principle governs this cause, and calls for reversal of the decree, and dismissal of the bill insofar as Mrs. Scott is concerned. In *Williams* v. *Jackson, supra,* the Federal Supreme Court held that as the equities were equal between the holder of the unpaid notes and the subsequent purchaser without notice, the holder of the legal title should prevail. We think the equity rule above quoted is peculiarly applicable here, and prefer to place the reversal on that universally recognized principle.

*Reversed and remanded.*

Additional note by LIVELY, PRESIDENT:

Since writing the above opinion I find in Vol. 2 Jones on Mortgages, p. 431, this statement: "By the weight of authority, a subsequent assignee of the mortgage or a subsequent pur-

chaser or mortgagee of the mortgaged premises, taking in good faith and for value in reliance upon the mortgagee's apparent ownership and discharge of the security is protected against the claims of a prior assignee of which he had no knowledge.'' Cited in support of the text is *Williams* v. *Jackson*, and numerous cases from seventeen states. In addition thereto may be cited *Porter* v. *Stuart*, 227 Fed. 840, and *Re Buchner*, 205 Fed. 454. I have not critically examined the cases cited by the above author, but note that in *Ogle* v. *Turpin*, 102 Ill, 148, *Ayers* v. *Hays*, 60 Ind. 454, *Vann* v. *Marbury*, 100 Ala. 438, the obligations secured were *not due* at the time the fraudulent releases were executed and recorded. In the instant case Ross had express authority from the holders of the obligations secured by the trust deed to release, upon satisfactory evidence produced to him that the obligations had been paid. Whenever Ross was satisfied of the fact of payment, they told him to release. They made him their agent for that purpose, relying upon his integrity. I repeat that the innocent purchaser of the lot was entitled to repose like confidence in his integrity. Should she suspect he was a rascal, and investigate the weight of the evidence of payment which moved him? Note the authority to release is upon *satisfactory evidence being produced to him*, not to anyone else. In *Vann* v. *Marbury, supra*, the subsequent purchaser was falsely told by the payee of the obligation secured that they were paid. He told her that one of the notes (the one in the hands of an assignee) was mislaid, and he would produce it the next day. Relying upon him she purchased; Vann then released the mortgage, and the court protected her against the holder of the note in due corse. In our case of *Bank* v. *Coal Co.* and *Thompson* v. *Bennett*, cited, the record disclosed to the purchasers that the persons who released did not have that express power, and put the purchasers on inquiry. In the instant case if a purported holder of the bonds had undertaken to release the trust deed, the purchaser would have been under notice to inquire and satisfy herself that the releasor owned the obligations in fact. But the situation is entirely different. The trustee acting for the owner of the equity of redemption and the holders of the obligations with *express authority* to release, has

exercised that authority in conformance with the power given him. "Where somebody must be the loser by reason of a deceit practiced, he who employs and puts trust and confidence in the deceiver should be the loser, rather than a stranger." The principle is stated another way as follows: "Where loss is caused by the fraud of a third person, such loss should fall on the one whose act enabled such fraud to be committed." See Maxims of Equity, 10 R. C. L., p. 378, p. 128. These are only different ways of stating the principle contained in the syllabus. The majority of the Court think that Bernard and the beneficiaries in the trust deed are the ones who first put trust and confidence in Ross, and thereby enabled him to deceive, and they should be the losers.

MAXWELL, JUDGE, (dissenting):

It seems to be settled law in this jurisdiction that a trust creditor, after having assigned the secured debt or a portion thereof, cannot legally release the lien and thereby destroy the rights of assignees, regardless of whether the rights of innocent third parties have intervened or not. *Bank* v. *Coal & Coke Company*, 89 W. Va. 659; *Thompson* v. *Bennett*, 105 W. Va. 191; *Myers* v. *Land Co.*, 107 W. Va. 632. In the *Thompson-Bennett* suit, which was brought by Thompson, assignee of Bennett, to cancel a release of the lien of a deed of trust, which release was wrongfully executed by Bennett subsequent to assignment to Thompson, JUDGE LIVELY, speaking for the Court, said:

"That Bennett had no authority to release the deed of trust which secured the notes assigned by him to Thompson and that such release was a fraud in law upon Thompson's rights, has been determined in our recent case of *Bank* v. *Coal Company*, 89 W. Va. 659. The record respecting the title to the lot showed that the trust deed was given to secure promissory negotiable notes none of which were due at the time Bennett attempted to release the lien. Subsequent purchasers or lienors were required to take notice of the fact that an assignment of these notes so secured assigned *pro tanto* the security of the deed of trust to that extent. As the law then was, it was the duty of a subsequent purchaser or lienor to ascertain if the original creditor, Bennett,

still had the notes at the time he released the lien which secured them, or whether those notes had been paid.''

In the case at bar, wherein there was a wrongful release by the trustee under a deed of trust, distinction is sought to be made between such situation and a wrongful release by a beneficiary or payee himself. I am unable to perceive any sound basis for such distinction. In either case, the wrong done the assignee is the same; and, in either case, the third party who comes into the situation by placing reliance upon the fraudulent release which he assumes to be regular and legal, could effectively avoid embarrassment by making reasonable inquiry at the outset as to the whereabouts of the notes or bonds evidencing the indebtedness secured by the deed of trust.

In this case the trustee, Ross, was authorized by the deed of trust to execute a release ''upon satisfactory evidence being produced to him that the aforesaid obligations have been fully paid.'' Now, if under former decisions of this Court, and particularly the *Thompson-Bennett* case, *supra,* it is the duty of a subsequent purchaser to inform himself as to whether the original creditor still owns the notes secured by the deed of trust, with all the more reason and necessity should such purchaser inform himself as to the ownership or whereabouts of notes or bonds payable to bearer; particularly where a trustee named in the deed of trust undertakes to release the lien of the trust. And the fact that such indebtedness was not due under the terms of the trust should operate as a danger signal to put the purchaser upon inquiry. It seems to me that ordinary prudence would have required the purchaser in the instant case to make inquiry of Ross as to the nature of the ''satisfactory evidence'' upon which he assumed to execute a release of the trust and to recite in his release that the obligations secured by the trust had been fully satisfied. A simple demand addressed to the trustee for production of the bonds would have resulted in disclosure of the fraud about to be perpetrated.

I cannot accord controlling weight here to the case of *Wil-*

*liams* v. *Jackson*, 107 U. S. 478, 27 L. Ed. 529, cited in the majority opinion. It is true that in that case the plaintiffs, Jackson and associates, assignees of the notes secured by the original deed of trust which was wrongfully and illegally released, were denied relief. Their rights were held to be inferior to those of Williams who in good faith loaned money under a second deed of trust after the first one had been released. In my judgment that case did not turn upon an immutable principle of right and justice that should in conscience be followed here, but it was controlled by the facts of the case which clearly required the decision which was made, and which facts I think are materially different from the facts here in at least one important particular, and that is that under the law of the District of Columbia, Jackson and associates could have recorded their assignment and thereby have avoided the difficulty. The court said:

> "If the plaintiffs wished to affect subsequent purchasers with notice of their rights, they should have obtained a new conveyance or agreement, duly acknowledged and recorded, in the form either of a deed from the original grantors, or of a declaration of trust from the trustees, or of an assignment from Augustus Davis of his equitable interest in the land as security for the payment of the notes. The record not showing that any person other than Augustus Davis had any interest in the notes, or in the land as security for their payment, an innocent subsequent purchaser or incumbrancer had the right to assume that the trustees, in executing the release, had acted in accordance with their duty."

While the decision did not turn entirely upon the failure of Jackson and associates to record an assignment of their notes, the language of the court indicates, to my mind at least, that such failure entered in no small degree into the reasoning and conclusion of the court.

In answering the position taken by Jackson and associates that Williams was negligent in not making full inquiry as to whether the original indebtedness had been discharged, the

court said, in substance, that the trustees under the original deed of trust and the original holder of the notes secured thereby having executed a release in which they recited that the notes had been fully paid, and the original owner and his wife having apparently concurred therein, Williams was not required to inquire of any of those persons as to the truth of the facts recited in the release, and that there was no other person of whom he could make inquiry. In my judgment, that line of reasoning does not meet a situation such as here. The proposition involved is not a mere inquiry of a trustee as to the truth of recitals made by him in a release, but there should be demand for production and cancellation of the notes or bonds. This involves no hardship where the transaction is honest, but it will speedily disclose fraud. I, of course, do not take the position that in all cases it is incumbent upon a subsequent purchaser to seek the facts lying back of a release, but I do think that in circumstances such as at bar a subsequent purchaser cannot rely blindly upon a purported release without inquiry or reasonable effort to ascertain the facts.

I therefore say that in so far as there was failure to comply with the recordation statute of the District of Columbia, there was a very different background for the case of *Williams* v. *Jackson* from what we have here; and in so far as the language of the court would seem to indicate that a subsequent purchaser is excused for not making definite inquiry as to the whereabouts of the notes secured by the prior deed of trust because, indeed, it would be a vain thing to ask those who had executed a release whether or not they had told the truth when they recited in the release that the debt had been paid, I am simply not able to follow as a general principle because I do not believe it is a sound principle to be employed in a case of facts and circumstances such as at bar.

I am willing for the case to be decided on the principle of equity announced in the syllabus, but I consider the facts as presenting a different aspect from that which is adopted by a majority of the Court. It is true that the assignees of the obligations secured by the deed of trust adopted the terms of the trust when they voluntarily accepted the obligations assigned to them and that among the provisions of the trust

so adopted was the one which authorized Ross, trustee, to execute a release. But under such authorization he was empowered to execute a release only "upon satisfactory evidence". His authority to execute a release was not carte blanche. It was expressly conditioned upon sufficient evidence being produced to him. This requirement should have put a subsequent purchaser on guard to ascertain definitely if such evidence had been produced. I would say that the purchaser was derelict, and not the assignee. Applying the law of the syllabus of the case to this view of the conduct of the parties, I would affirm the trial chancellor.